### HINCKLEY and others vs. BECKWITH and another.

Where the lessors of a saw mill refused to make repairs which it was their duty to make, and the lessees were unable, for that reason, to use the mill, the latter were entitled to any *necessary* expenses in hauling to another mill, to be sawed, any logs then in their yard, and which might have been sawed by them during their term.

But the lessors were entitled to show that the expense incurred for that purpose was *unnecessary*, by proving that they offered to saw such logs for the lessees at an adjoining mill, at a price not greater than what it would have cost the lessees to saw the logs at their own mill.

APPEAL from the Circuit Court for *Green Lake* County.

A reference to the opinion of the court in this cause as reported in 13 Wis., 31, and the following opinion, will render unnecessary any statement of the facts in this place.—The cause came up at this term on an appeal by the defendants from a judgment rendered against them in the circuit court.

*Wheeler & Kimball*, for appellants.

*W. C. & H. S. Webb*, for respondents.

*By the Court*, COLE, J.   When this case was before us at a previous time, in discussing the question of damages, we stat-

ed, among other things, that the expense of hauling the logs
—which were at the mill at the time it stopped running, and
which belonged to the respondents—to another mill to be saw-
ed, as well as the extra cost of sawing them above what it
would have cost to saw them at the leased mill, were proper
items to be considered by the jury in estimating the damages
the respondents should recover. See case in 13 Wis., 31–35.
The respondents alleged in their complaint, and sustained the
allegation by evidence,. that at the time the mill broke down,
they had logs at the mill capable of yielding two hundred
thousand feet of lumber, which they were obliged to haul to
another mill at a distance of several miles, to be manufactured
into lumber, and which they might have sawed themselves at the
leased mill at an expense of two dollars a thousand, if the
mill had been repaired; and claimed to recover these expenses
as a part of the damages they sustained from the default of
the appellants in not performing their agreements in the lease.
This claim we thought was well founded ; and we should re-
main of the same opinion if the facts of the case were un-
changed.   But to meet this branch of the case, on the second
trial, the appellants offered to prove by one of their own num-
ber, who was sworn in the cause, that after the break occurred
they offered to the respondents to saw their logs then in the
mill yard at the same price they could have been sawed for at
the leased mill.   This testimony was objected to, and ruled out
by the court, and an exception taken.   We are unable to per-
ceive upon what ground this testimony was excluded.   It ap-
pears to be strictly pertinent to the case, and meets fully the
claim of the respondents upon their items of damages.   For
suppose the appellants had offered to saw the respondents' logs
then in the mill for the same price it would have cost them to
manufacture them, and had been in a condition to make this
offer good: should they then be compelled to pay the expense
of hauling the logs seven miles to another mill, to be sawed? It
appears to us that they should not.   It certainly could make

no manner of difference to the respondents whether their logs were sawed by the appellants or somebody else. The main thing to be secured was, to have them manufactured into lumber. If the appellants were ready and willing to do this without having the logs removed, why should they not have had the privilege of doing it, and thus have saved the expense of hauling the logs away? Suppose there had been a mill within a half mile of the leased one, where the logs could have been as cheaply and satisfactorily manufactured into lumber as elsewhere: would it be seriously contended that, notwithstanding this, the respondents could haul their logs off seven miles, and recover the expense of such hauling?

We presume that no one would claim that the appellants should pay for such wanton and unnecessary expense. Upon what principle or by what reason, then, can it be maintained that the appellants should pay this item of damages, if it appears they offered and were ready to do the work themselves, and thus save the necessity of removing the logs at all? Of course the appellants should make good all direct and necessary damages occasioned by their neglect to repair the mill. And, under the circumstances, we have stated that the respondents were not bound to take measures to make these repairs. The lease only required them to make repairs which would not cost over five dollars; and repairing the valve and seat would have cost considerably more than this. Besides, it appears from the testimony of *Nelson F. Beckwith,* one of the appellants, that they did not wish nor intend that such repairs should be made by any one. For he says expressly that when he was about leaving home, after having once repaired the valve and seat, he told the men, if the engine failed before his return so that they could not saw, that they might take the mill down. This indicated clearly an intention not to have any expensive repairs put upon the engine, but to tear the mill down, and therefore the appellants might have had reason to complain if the respondents had made them. But while this

was so, the respondents had no right to incur unnecessary expense merely to aggravate the loss consequent upon the failure of the appellants to repair the mill according to the stipulation of the lease. And this they did do, providing they hauled their logs off seven miles to another mill, when the appellants were ready and offered to saw them at their own mill, and save this expense. We therefore think the circuit court erred in refusing to permit the appellants to prove that, after the break occurred, they offered to the respondents to saw their logs then in the mill yard at the same price they could have been sawed for at the leased mill.

This renders it unnecessary to notice the other questions raised by counsel; for whatever might be our views upon them, it is obvious that the judgment must be reversed for the reason already given.

The judgment of the circuit court is reversed, and a new trial ordered.