THE JOHN HUTCHINSON MANUFACTURING COMPANY v.
BENJAMIN W. PINCH.

*Breach of contract—Recoupment—Loss of profits—Measure of
damages.*

1. The prospective profits, arising from the use of a custom and
manufacturing flouring-mill are too speculative to be shown as
a measure of damages for the breach of a contract for fur-
nishing machinery and repairing the mill within a specified
time, and by reason of which breach the owner lost the use
of the mill.

2. The measure of damages in such a case is the fair rental value
of the mill during the time the owner is deprived of its use;
overruling *Allis v. McLean,* 48 Mich. 428, in so far as it holds
a contrary doctrine.

3. The owner cannot recover the value of grain ground, and the
loss arising from the manufacture of poor flour, during the
time when he knew the mill was not in a condition to do good
work, such grinding being done to test the mill; but he can
recover the value of his own time lost, and the amount he was
obliged to pay his employés while lying idle, by reason of the
contractor's default in performing.

Error to Eaton. (Hooker, J.) Argued October 8,
1891, and reargued January 21 and 22, 1892. Decided
April 8, 1892.

*Assumpsit.* Defendant brings error. Reversed. The
facts are stated in the opinion.

*Shriner & Fox,* for appellant.

*Daniel A. Ferguson* (*Wilson & Cobb,* of counsel), for
plaintiff.

[The points of counsel and the authorities cited are
stated and reviewed in the opinion.—REPORTER.]

Morse, C. J. The plaintiff sued defendant for machinery and repairs furnished for the latter's flouring-mill. The defendant claimed that under the agreement the plaintiff promised to put in the machinery and complete the repairs in a good and workman-like manner within 10 days after the work was commenced, which work should begin "in a few days or a short time" after the date of the agreement; that plaintiff did not commence the work as soon as agreed, did not do it in a workman-like manner, and did not complete it within four weeks after the work was begun; that by reason of improper material, and the unskillful manner in which the work was done, much of the flour made by such mill was unfit for "custom and merchant flour;" that said mill was kept closed 50 days, and that the mill, as completed by plaintiff, is in an improper condition for running and properly performing the work of a first-class full roller process custom and merchant flouring-mill, as plaintiff agreed it should, and that it takes more power to operate it.

On the trial the defendant was asked:

"*Q.* Mr. Pinch, how much were you damaged by reason of the mill lying idle for the excess of 10 days, until the time it was finished? In other words, it laid still how many days more than the 10 days?

"*Mr. Ferguson*: I object.

"*The Court:* That brings up the question. The witness, I think, can't state how many dollars and cents he has been damaged. He can state how he was damaged, and show the circumstances that will enable the jury to judge. There is another question involved in it, and perhaps it had better be discussed together. I suppose you are getting at the profits of the mill?

"*Mr. Shriner:* Yes, sir."

Mr. Corbin, for plaintiff, contended that the profits were too indefinite, and the question was excluded.

Counsel for defendant then offered as follows:

"*Mr. Shriner*: Now, if the court please, we offer to show that after Mr. Crandall and his men worked on the mill 10 days, Mr. Pinch notified Mr. Hutchinson that the time had expired in which he was to have the mill completed; that the mill was overstocked with grain; that he was losing by reason of the delay every day; and that these men went on with that mill until the 3d day of March; and that, by reason of that failure to fulfill their contract, Mr. Pinch suffered large damages, to the amount of $500.

"*The Court*: This offer may be considered as preceding the former ruling.

"*Q.* About how many grists were in your mill at the time they had worked 10 days upon their contract, on the repairing of the mill? * * *

"*Q.* What was the difference, Mr. Pinch, of the value of flour per barrel after the mill was finally completed in perfect order, than what it was before they commenced fixing the mill?"

Both these questions were objected to and ruled out. He was also asked:

"What, in your opinion, was the use of the mill worth for those 11 days?"

The court said this was an indirect way of asking witness how much he could have made out of the mill, and excluded the question. Other questions were asked in different ways, but all to the same import, and were not allowed to be answered. It was also attempted to show the value of defendant's time lost during the time over 10 days in which the mill could not be run, but the circuit judge was of the opinion that he could not recover for such lost time. Counsel for defendant then made the following offer:

"I offer to show by Pinch that his business was injured a large amount by reason of the manner in which the contract was performed, and that he lost the use of the mill, and the profits of the mill, for a long time, to wit, 30 days, by reason of the manner in which the contract was performed.

I desire to show what the profits were, and to show in every way that he was injured. I desire to show by him how he was injured.

"*The Court*: How do you propose to show that he was injured?

"*Counsel for Defendant*: By the loss of his time; by the injury of the flour; by the amount he had to pay out in the place of it; by the loss of time; by the loss of customers; and by the loss of the reputation of the mill, because of its having been pronounced finished by those parties, when it was improperly finished.

"*Counsel for Plaintiff*: It is objected to as immaterial and irrelevant. Not a proper way to prove the measure of damages. (Which objection was by the court then and there sustained.")

The court instructed the jury that no damages could be awarded to the defendant for the profits lost by reason of the mill being idle, even if they found that the agreement was that the mill should be put in good running order in 10 days.

This was a custom, as well as a manufacturing, flouring-mill. The prospective profits of such a mill would certainly be too speculative to be shown as damages. *Howard v. Manufacturing Co.*, 139 U. S. 199 (11 Sup. Ct. Rep. 500); *Pennypacker v. Jones*, 106 Penn. St. 237; *Abbott v. Gatch*, 13 Md. 314; *Rogers v. Bemus*, 69 Pa. St. 432; *Winne v. Kelley*, 34 Iowa, 339; *Allis v. McLean*, 48 Mich. 428; *McKinnon v. McEwen*, Id. 106; *Maltby v. Plummer*, 71 Id. 579; *Petrie v. Lane*, 58 Id. 527. The defendant relies upon *Leonard v. Beaudry*, 68 Mich. 312, 80 Id. 163, in support of his contention that he was entitled to show the profits that he might have made in the mill if it had been finished within ten days. But in *Leonard v. Beaudry, supra*, and in *Atkinson v. Morse*, 63 Mich. 276, there was a breach of contract, where the difference between the cost of doing the work to be performed and the contract price would be the measure of damages. The profits in such a case we held could be ascertained

with reasonable certainty. This case seems to fall within the other line of cases, where the uncertain and speculative profits of a mill from day to day are endeavored to be measured; where there is no certain amount of work contracted to be done at a certain or fixed price for the work, but where the mill-owner must depend upon how much custom he may happen to have, and many other contingencies, as pointed out in the cases above cited.

But upon examination of the authorities, and upon principle, I am satisfied that the defendant was entitled to show in reduction of plaintiff's claim the value of the use of the mill while it was compelled to lie idle by the failure of plaintiff to complete the contract within the time specified. A denial of this right would be rank injustice, and leave the defendant remediless for his loss, and at the same time compel him to pay the full value of the machinery and repairs to the plaintiff, the same as if the work had been done within the time agreed upon.

"As a general rule, the expected profits of a business cannot be proved, and therefore cannot be recovered. They might have been made, and they might not. Hence, in such cases, the measure of damages is not the expected profits, but the average value of the use of the land, property, or business, and, to ascertain this, evidence of actual past profits must be admissible." 1 Sedg. Dam. (8th ed.) § 174. "Rent is given not as specific damage, but as a fair average measure of compensation." Id. § 186; *Sinker* v. *Kidder*, 123 Ind. 528 (24 N. E. Rep. 341); *Crawford* v. *Parsons*, 63 N. H. 438; *Woodin* v. *Wentworth*, 57 Mich. 278; *Bostwick* v. *Losey*, 67 Id. 554; *Griffin* v *Colver*, 16 N. Y. 489, 496.

In the present case, the failure to put in the machinery and make the repairs within the 10 days naturally resulted in the stopping of the mill while the machinery was being put in. The defendant expected to shut down his mill for 10 days,

but under his statement of the agreement the work was to be finished within that time. If so, he was compelled to keep his mill idle for some time beyond the 10 days, because of the fault of the plaintiff in not fulfilling its contract as to the time of performance. His damage is the value of the use of the mill while it was so kept idle by the plaintiff's fault. This is not an allowance of the profits which, in this particular case, might have been made, but of the average sum, represented by rent, which the property was worth. 1 Sedg. Dam. (8th ed.) § 190; 2 Suth. Dam. 490.

When a contractor undertakes to perform a contract to put a mill or other machinery in operation, he ought to be holden to indemnify the other party against the loss of the use of the mill or machinery after the expiration of the time for the performance of the contract. See *Davis v. Talcott*, 14 Barb. 611, 628; *Brown v. Foster*, 51 Penn. St. 165; *Abbott v. Gatch*, 13 Md. 314; *Green v. Mann*, 11 Ill. 613; *Rogers v. Bemus*, 69 Penn. St. 432; *Willey v. Fredericks*, 10 Gray, 357; *Benton v. Fay*, 64 Ill. 417; *Griffin v. Colver*, 16 N. Y. 489.

In *Abbott v. Gatch* a new mill was erected, but not in the time agreed upon. The uncertainties of the milling business were considered too great to allow prospective profits as damages, but the measure of damages was held to be the fair rental value of the mill.

In *Green v. Mann* the lessor of the mill agreed to put in two additional run of stone, but failed to do so. The measure of damages was held not to be the expected profits from the use of the stone in the business, but the fair value of the use of the two run of tone.

In *Rogers v. Bemus* the profits of a new mill, not erected within the time agreed upon, were held to be too remote, contingent, and speculative; but it was said that

91 Mich.—11.

the fair rental value of the mill was the true measure of the damages.

In a late case in Iowa—*Brownell v. Chapman*, 51 N. W. Rep. 249—this matter was carefully considered. The plaintiff sued to recover the price of boilers furnished for a pleasure boat at a summer resort to the proprietor of the resort. The defendant put in a counter-cla'm for damages caused by the failure of plaintiff to deliver the boilers within the time agreed upon. It was held that the measure of defendant's damages was the rental value of the boat, and not the interest on the capital invested therein for the time defendant was deprived of its use. The court refer to the cases of *Allis v. McLean*, 48 Mich. 428, and *Taylor v. Maguire*, 12 Mo. 313, as not in harmony with this holding, but say that they are clearly overborne by the weight of other cases and the current of authority. Mr. Sedgwick also says that the case of *Allis v. McLean* "would hardly be followed." 1 Sedg. Dam. (8th ed.) § 186. In *Allis v. McLean*, after discussing the question of prospective profits, and ruling that they could not be shown as damages, Judge COOLEY says:

"But this case is thought to be different, because here the fair rental value of the mill is proved, and it is said that this was certainly lost. But we do not know that that was the case. If the mill had been in condition to rent at that time, there may have been no customer for it on terms the owner would have consented to grant; and, if customers were abundant and satisfactory, it cannot be assumed that the whole rental value is lost when a mill stands idle. The wear and tear of machinery and buildings in use is something, and it is not improbable that the landlord would take this, among other things, into account in determining what should be the rent. But in this case it does not appear that rent was lost or could have been lost, for it is not shown that defendants desired to rent, or would have consented to do so if a customer had offered. In fact, the contrary is clearly inferable."

The exact point thus ruled in *Allis v. McLean* has never since been before this Court; yet in two cases—*Woodin v. Wentworth,* 57 Mich. 278, and *Bostwick v. Losey,* 67 Id. 554,—the value of the use of a mill has been permitted to be shown as the measure of damages. In the first case the injury complained of was the unlawful holding back and diverting of the waters of a river, thereby preventing plaintiff from using his mill. It may be claimed that, as this was an action in tort, there is no analogy between this case and *Allis v. McLean.* But in *Bostwick v. Losey* the action was in *assumpsit.* Plaintiff sued for the rent of a saw-mill. Defendants pleaded that plaintiff had agreed to make certain repairs, but failed to keep such agreement, to their damage, and sought to recoup such damages against plaintiff's claim. This Court said in that case:

"The failure of the water-power was the grievance complained of. The defendants were entitled to the use of it, as it would have been had the flumes been kept in repair, for saw-mill purposes. The value of the use of such water-power for such purposes was shown by witnesses. We do not consider that such value was speculative or uncertain, or that showing such value, and allowing it as the basis of damages, was in effect permitting the profits of the saw-mill to be computed in estimating the damages. The contract or lease itself shows that this water-power had a rental value, and we can see no serious difficulty in the way of ascertaining to a tolerable and sufficient certainty the value of this use, to which the defendants were entitled by their agreement."

The rule announced in *Bostwick v. Losey* in principle applies to the case before us, and I see no reason why the value of the use of this flouring-mill cannot be ascertained in this case without serious difficulty and with sufficient certainty.

It being firmly established by the authorities that the prospective profits of a milling business are too specula-

tive and uncertain to be used as a measure of damages, there would be no adequate remedy for the owner of a mill, in such a case as this, for a breach of contract that for a certain time would deprive him of the use of his property, if the case of *Allis v. McLean* is too be taken as authority in this State. This would be so manifestly unjust that, in so far as that case seems to hold that the fair rental value of a mill cannot be shown as damage in a case like the present, I think it should be distinctly overruled. It is not only against the whole current of authority elsewhere, but it is opposed to equity and justice. In the case before us the nature of the contract was such that both of the parties must have understood that the mill must be idle while the changes were being made in the machinery of it. If the plaintiff agreed to do the work in ten days, and failed to do so, there can be no hardship in requiring it to make good the loss of the use of the mill which was occasioned by its failure to perform its contract.

The defendant would also have been entitled to the value of the loss of his own time, had such damages been properly pleaded. And if he had shown that he was obliged to pay men in his employ while they were lying idle, on account of plaintiff's fault, he would have been entitled to recompense for the money so expended. *Brownell v. Chapman* (Iowa), 51 N. W. Rep. 249.

The work was commenced on the 7th of February. Defendant claimed that Mr. Crandall, who was doing the work for plaintiff, declared the mill completed on the 3d day of March. Defendant, however, told Crandall that he did not want the mill left on his hands until it was thoroughly tested, and, if he could not stay and take charge of it, he wanted the plaintiff to send some one to take charge of it. A man by the name of Hoffman came, as he supposed by plaintiff's order, and ran the

mill five days, but it did such poor work that defendant discharged him, because he thought him incompetent, and the mill was wasting the stock. He then telegraphed plaintiff that everything was wrong, the mill was losing defendant money, running good stock into bad, and plaintiff had better come and see to it. Plaintiff sent Mr. Sewell, who came there and went to work, and finished the mill March 25. Defendant, by some of the questions above quoted, and by other inquiries, attempted to show the loss to him by reason of the poor flour manufactured while Hoffman was running the mill, and before Sewell commenced work,—in all about 11 days. The court would not permit him to do so, because defendant in his own evidence claimed that the mill was not finished until Sewell left it, and that the flour was ground in experimenting; that he could not charge his loss to plaintiff. Defendant also attempted to recover for the value of grain lost,—as his counsel stated, "Understood to be lost purely experimenting." This was not permitted. In view of the fact that the defendant, by his own showing, knew that the mill was not in good condition to do good work, and ground this flour simply to test it, we do not think the court erred in these rulings.

The plaintiff denied that it agreed to perform the work in any given time, but we have dealt with the question of damages in the light of the defendant's theory.

The judgment of the court below is reversed, with costs of this Court to the defendant, and a new trial granted.

The other Justices concurred.