# Southern Iron & Equipment Co. v. Holmes L. Co.

### Assumpsit.

(Decided Dec. 21, 1909.   51 South. 531 )

1. *Appeal and Error; Harmless Error; Pleading·*—Where the court charged that plaintiff could not recover both species of damages under the counts; no injury resulted to the defendant from the fact that the count claimed special damages both for the rental value of plaintiff's plant, and interest on its selling value.

2. *Pleading; Proof; Variance.*—Where two or more items of damage are alleged the failure of proof as to one item does not constitute a variance.

3. *Contracts; Breach; Jury Question.*—Where the evidence was in conflict as to the contract, the question as to the contract was one for the jury.

4. *Sales; Remedy of Buyer; Evidence.*—The evidence in this case stated and examined and held to require a submission to the jury of the facts involved.

5. *Same; Measure of Damages.*—Where the action was for breach of a contract for the sale of an engine causing the loss of use of the plaintiff's entire plant, the measure of damages was the rental value of the plant if the delay was of such a length of time as it could be said that plaintiff's plant had a rental value; but if the time was so short or intermittent that the plant could not be said to have had a rental value, the measure of damages would be the interest on the value of the plant.

6. *Same; Evidence.*—The evidence in this case stated and examined and held to show that plaintiff's plant was not idle for a sufficient length of time to give it a rental value, and hence, the measure of damages was the interest on the value of the plant.

7. *Damages; Duty to Reduce; Application of Rule.*—The rule that when a contract to deliver chattels is breached the buyer is bound to minimize his loss by going into the market and securing such ar-

ticles has no application to an action for a breach of contract to sell and deliver a locomotive, it not appearing that an engine of the type in question was readily obtainable, especially, where it is not clear that the seller did not relieve the buyer of such duty by repeated assurances of early delivery.

APPEAL from Bibb Circuit Court.

Heard before Hon. B. M. MILLER.

Action by J. Fletcher Holmes and another against the Southern Iron & Equipment Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Amended count 5 is as follows: "Plaintiffs further claim of the defendant the sum of $6,000 damages for the breach of a contract entered into between the parties hereto on, to wit, the 1st day of July, 1907, in which contract the defendant agreed to furnish and deliver to plaintiffs for the sum therein agreed upon one certain Shay engine and equipment in thorough working order and up to date in every particular, shipment of same to be made not later than August 1st, 1907, unless requested by plaintiffs not later than September 1st, 1907, which request the plaintiffs averred they did not make. Plaintiffs aver that they were engaged at said time near Scottsville, Ala., in the manufacture and sale of lumber, and had for that purpose a large plant, and had begun and almost completed at great expense the construction of a tram car railroad to transport timbers or logs to their said plant, and they aver that they purchased the said engine and equipment to aid in the completion of said railway, and thereafter to transport over the same timbers and logs for their said plants for the manufacture of same into lumber, of all of which facts the defendant was aware and well knew at the time of the execution of its said contract; and plaintiffs aver that at such time the defendant well knew that said plant would be idle if defendant failed to perform

its said contract. Plaintiffs aver that defendant failed
to comply with its said contract in this: The defend-
ant failed or refused to furnish or deliver said engine
and equipment as it had agreed to do, and did not fur-
nish and deliver the same until on or about October 15,
1907, and in consequence of said failure the plaintiffs
were unable to supply or furnish their said mill with
logs or timbers necessary to run their said plant, and
their said plant was stopped or practically idle for a
long time, to wit, three months, whereby the plaintiffs
lost the use and rental value of their said plant during
said period, as well as their interest on the value of
said plant, and plaintiffs claim special damages there-
for, in the sum of $6,000; and plaintiffs aver that by
reason of said breach the plaintiffs lost the time and
services of themselves and their said employes for a
long time, to wit, three months, to their damage in the
sum of $1,000, which sum they hereby specially claim.
Plaintiffs further aver that said contract is further
breached by the defendant, in this: That defendant
contracted and agreed to furnish and deliver said en-
gine and equipment in thorough working order and up
to date in every particular, and so guarantee the same;
but, on the contrary, the plaintiffs say that said engine
and equipment furnished was not as represented and
guaranteed in this: That one pedestal stand was brok-
en, the lubricator was worthless, as was the steam
guage, the middle piston rod was three-fourths of an
inch too long, the front engine bed was broken, the pin-
ions were loose, the knuckle clamps and couplings were
broken, journal brasses on the left side were worthless,
the crown sheet was patched and not new or in proper
condition, the flues were worthless, the smokestack did
not fit and was broken, there were no cut-off valves on
the tank, no safety notch on the throttle, no oil cups, no

oil holes on the left side, and the cab was not finished, for which the plaintiffs specially claim as damages the sum of $750.

LOGAN, VAN DE GRAFF & FULLER, and TYSON, WILSON & MARTIN, for appellant.—The demurrers to count 1 and 2 should have been sustained, as it does not appear that the parties had in contemplation at the time of the contract the damages averred to have been suffered by plaintiff.—*Bell v. Reynolds,* 78 Ala. 512; *Daugherty v. A. U. T. Co.,* 75 Ala. 168; *Ross v. Bozeman,* 41 Ala. 678; *Boggan v. Bennett,* 102 Ala. 400. Demurrer should have been sustained to count 5.—See authorities supra, and *Watson v. Kirby,* 112 Ala. 436; *Southern Ry. v. Coleman,* 153 Ala. 266; *McFadden v. Henderson,* 128 Ala. 221. The court erred in permitting evidence as to the rental value of the plant. The true measure of damages in this case was the difference in the value of the engine purchased and one of similar type which could be procured in the market, and not the rental value or the interest on the value of the plant.—Authorities supra, and *Alabama Wks. v. Hurley,* 89 Ala. 217; *Goodend v. Moses,* 99 Ala. 230. All the writings and conversation relative to the sale became merged in the contract, and the time of the delivery of the engine was fixed by the contract.—*Pearson v. Dancer,* 144 Ala. 427; *Couch v. Woodruff,* 63 Ala. 466. The contract was not complete until the instrument of October 15th was signed.—*Hodges v. Subblett,* 91 Ala. 588; *Bessinger v. Price,* 117 Ala. 480. There was a variance between the allegations of the complaint and the proof as to the time and making of the contract.—*New York Co. v. McPherson,* 137 Ala. 116; *Burton v. Dangerfuld,* 141 Ala. 285. The duty was on the plaintiff to minimize his damages by going into the market and purchasing simi-

[Southern. Iron & Equipment Co. v. Holmes L. Co.]

lar articles—in this case a second-hand engine, and this court can fairly presume and should presume that a second-hand locomotive could be procured in the market.—See authorities supra, and note to 29 Am. St. Rep. 729; *Austrian v. Springer*, 34 Am. St. Rep. 350; *Ala. Chem. Co. v. Geis*, 143 Ala. 591; *Mitchell v. Clark*, 71 Cal. 164; *Rose v. Perry*, 8 Yerg. 157; *Myers v. Davis*, 17 Ill. App. 230.

DANIEL COLLIER, and J. T. ELLISON, for appellee.— Counsel discuss various assignments of error and insist that the case should be affirmed on the authority of. —*Southern Ry. Co. v. Coleman*, 44 South. 838; *Nichols v. Rash*, 138 Ala. 377; *Watson v. Kirby*, 112 Ala. 438.

McCLELLAN, J.—Action for breach of contract, by a purchaser against a seller, for the sale and delivery, at or by a stipulated date, of a locomotive. The complaint, at different stages, contained counts 1 to 5, inclusive. Counts 3 and 4 were stricken in response to demurrers. Counts 1 and 2 were well drawn for the recovery of at least nominal damages for the breach of the contract alleged. Furthermore, the court, at defendant's (appellant's) instance, affirmatively instructed the jury that on these counts no more than nominal damages could be awarded. Count 5, claiming, after amendment, special damages, is the count out of which the chief question argued here arises. The reporter will set out this count (5) as last amended. The court, at defendant's request, charged the jury (charge 8) that "the plaintiffs cannot recover both the rental value of their plant and the interest on its selling value as special damages under the fifth count of the complaint." Accordingly no possible injury could have resulted to defendant by reason of the claim, averred conjointly in

the count, of damages of the two kinds mentioned in the special instruction given for defendant. Nor was a variance wrought by the assertion, for appellant, of failure to prove or sustain both such kinds of damages.— 31 Cyc. p. 706, and authorities cited in note 62; 22 Encyc. Pl. & Pr. p. 580, and authorities cited in note 3.

What the contract between these parties was obviously was a jury question, as the trial court held. The evidence was in palpable and immediate conflict between the litigants; one asserting that a date for delivery was expressly stipulated for, and the other that no such date was stipulated. The insistence for appellant, that the writing signed by the parties in October, 1907, was the sole expositor of the contract, and hence incapable of alteration by parol evidence, cannot be approved. The sole theory of the defense on the trial rested on the assumption, and insistence by it, that the contract of purchase and sale of the locomotive was that resulting from the letter of plaintiffs (appellees) of date of July 2d, defendant's reply thereto, accepting the order, of date July 5th, and plaintiffs' acknowledgement of the same by letter of date July 8th. Kern, president and general manager of the defendant, testified in response to interrogatories in chief propounded to him by defendant that "there was no other trade ever made by the company to sell the plaintiffs a Shay engine, other than contained in the order or letter of July 2d, from Holmes Lumber Company, and our reply thereto, dated July 5th, and their acknowledgement of the same dated July 8th."

Aside from the introduction of the October document, there is nothing in the record to indicate any other basis of defense, in respect of the terms of the contract, than that to which the quoted testimony of Kern tended. As before stated, the defense, in this connection,

was that no date for delivery was stipulated. The contest largely hinged upon this issue. If the theory of the defendant was taken as sustained by the jury, the plaintiffs could not recover, since such a stipulation was of the essence of the breach alleged and relied on for a recovery; and, if breach there was in this particular, it intervened long before the October instrument was executed. Doubtless it was offered and admitted as tending to corroborate the defendant's contention that no stipulation of date of delivery was embraced in the contract of purchase and sale. In addition to the testimony quoted from Kern, the record abounds in letters and telegrams, written and sent and received by the parties prior to the execution of the October instrument, wherein the existence of the contract of sale and purchase was admitted. If so, and the contract was as plaintiffs contend in respect of stipulation for delivery at or by a given date, and it was breached as alleged and as proof tended to show, we can conceive of no justification for a conclusion, rested on the terms of the October instrument, that would denude the plaintiffs of their cause of action for that breach, in the absence of a relinquishment, for a consideration, of defendant's liability therefor to the plaintiffs.

The facts, as shown by evidence for the plaintiffs, were these: That plaintiffs were the owners and operators of a large sawmill plant in Bibb county, Ala.; that as a part of this enterprise the plaintiffs were constructing, and had in part completed, a tramway or railway from the mill towards the source of timber supply; that a locomotive was necessary to draw materials, etc., from the mill end of the way, as well as to bring timber over the way, as completed, to the mill; that one of plaintiffs, with a machinist, went to Atlanta, the place of defendant's business, and there purchased a lo-

[Southern Iron & Equipment Co. v. Holmes L. Co.]

comotive, called in the record a "Shay engine," from the defendant; that defendant's representative, conducting the negotiations and sale, was informed of the purpose in buying the engine; that the necessity for speedy delivery of the engine was brought to the attention of defendant's salesman; that the character and extent of plaintiffs' operations in Bibb county were also brought to the attention of the salesman; that the terms of the purchase and sale included the stipulation that the engine would be delivered f. o. b. Atlanta not later than August 1, 1907, unless plaintiffs requested it to withhold delivery not later than September 1, 1907, which request was not made; that defendant was informed that delay in delivery, as agreed, would entail large loss upon plaintiffs; that the need for the engine was immediate, and, unless delivered promptly, the loss to plaintiffs in the operation of their extensive project would be great; that the engine was not delivered until about the middle of October, 1907; and that, when received by plaintiffs, it was in unserviceable condition in many particulars, and plaintiffs incurred considerable expense in rendering the engine fit for service. The defendant's evidence denied the stipulation for delivery, denied that any time or date was agreed on or mentioned, denied the imperfection of the engine when it was shipped in October, denied, as at that time of contracting, any information of special loss or damages to plaintiffs in consequence of delay, if occurring, in delivery of the engine.

In support of its plea 2—a plea of recoupment and set-off based on the undue retention of, and damage to, a "dinkey" engine loaned plaintiffs in September, 1907, at their request, by defendant, for use pending the delivery of the Shay engine—defendant offered testimony tending to that end. Plaintiffs presented testimony

tending to establish the converse of the material aver-ments of the plea. The action was commenced by at-tachment levied on the dinkey engine on November 21, 1907. The sheriff took possession of the dinkey engine under the levy. On January 14, 1908, defendant enter-ed a general appearance. This engine reached it, at Atlanta, in April, 1908. Plaintiffs did not, as appears, have the engine. Between the date when the Shay en-gine, shown by some of the evidence to have been fit for use as received and in breach of the contract in that particular, reached and was repaired by plaintiffs so as to be serviceable, and the date of the levy of the writ of attachment on the dinkey engine, it was not conclusive-ly shown that plaintiffs used the dinkey, or that such lapse of time was unreasonable delay for the return of the dinkey as plaintiffs had agreed to do. These obser-vations, summarily made, were sufficient to show that the court did not err in refusing charge 1, requested by defendant. It was the general affirmative on the "issue joined" upon plea 2.

If the plaintiffs' view of the contract was accepted by the jury, and if the absence of the engine caused the loss of the use of the entire plant by plaintiffs, they were entitled to compensation for the loss. Two methods for the ascertainment of the value of this loss have the sanction of the law: First, and primarily, the value of the hire or use of the plant so rendered idle, if the pe-riod of consequent idleness was for an appreciable length of time—that is, a period in which it could be reasonably said that the plant had a rental value; and, second, if the period or periods of idleness was or were so short or so intermittent as that the plant could have no rental value, then the interest on the value of the plant would be proper admeasurement of damages. These rules are appropriated, almost verbatim, from

*Southern Ry. Co. v. Coleman*, 153 Ala. 266, 44 South. 837. See also, *Freeman v. Clute*, 3 Barb. (N. Y.) 426; *Sinker v. Kidder*, 123 Ind. 528, 24 N. E. 341; *Hutchinson Man'f'g Co. v. Pinch*, 91 Mich. 156, 51 N. W. 930, 30 Am. St. Rep. 463; *Bostwick v. Losey*, 67 Mich. 554, 35 N. W. 246; *Brown v. Foster*, 51 Pa. 165; 111 Suth. on Dam. (3d Ed.) § 703, and notes; 1 Sedg. on Dam. § 186. It is insisted for appellant that the holdng, in the stated particular, in *Southern Ry. v. Coleman, supra,* is dictum. Whether that be true or not, the here pertinent announcement made in that case is sound, and is, on reconsideration, reaffirmed.

By special charge 6, which was refused, the defendant sought to have the jury instructed that the plaintiffs could not recover as damages the rental value of the plant. This charge raised the inquiry whether, on the evidence, the plaintiffs had shown such a period or periods of idleness of their plant, in consequence of the absence of the engine, as to justify the admeasurement of their damages according to the first rule before stated. Unusual difficulty is encountered in the solution of this question. However, after thorough consideration, and this in the aiding light of able discussons of the inquiry by the respective counsel, we feel impelled to hold that the evidence entirely fails to measure up to the standard in particular indicated. A number of witnesses were examined on the two issues, viz., the value of the plant, and the rental value of the plant. The value of the plant was testified to be from $15,000 up to $125,000. The rental value was said to be from $200 to $250 per day. In addition to these witnesses, others were examined on the vital question of the period or periods of idleness of the plant in consequence of the absence of the engine. J. F. Holmes, one of the plaintiffs, testified on the trial. His testi-

[Southern Iron & Equipment Co. v. Holmes L. Co.]

mony on the inquiry just above stated may be taken to be as definite and as strong as that of any of the several other witnesses examined on the inquiry. He said: "After the 10th of August, 1907, our entire plant was idle for most of the time until the last of October, 1907. I would say that from the 10th to the 31st of August the mill was idle one-half of the time, in September about three-fourths of the time, and in October about one-half of the time."

It appears that testimony of the tenor quoted falls very far short of meeting the rule with respect to rental value. It could not be fairly inferable from such testimony that the plant was idle for any definite consecutive number of days. Indeed, the inference is entirely consistent with such evidence that the plant was idle only fractional parts of days during the period stated by Holmes. No witnesses undertook to say that a plant of this character had a rental value for a fractional part of a day. Whether these spaces, in the three months mentioned, were intermittent, were fractional in respect to days, or were concurrent after two or more days of active operation, was left to free conjecture. We do not think such indefiniteness and uncertainty can afford a basis for the ascertainment of the rental value of an enterprise of the kind here involved. This was unquestionably a large plant, and even if credibility be accorded the idea that such a plant could have had a rental value for one day at a time, there can be, we think, no rational doubt that such rental value finds no basis in point of fact in testimony to the effect only that the plant was idle "most" or "half" or "three-fourths" of given parts of months. That testimony may be entirely credited, and yet the idleness have prevailed in indefinite parts only of the time given. We therefore conclude that charge 6 was erroneously refused defendant.

[Southern Iron & Equipment Co. v. Holmes L. Co.]

On the testimony before us, the measure of the plaintiffs' damages was interest on the value of the plant during idleness, provided, of course, the jury accepted plaintiffs' version of the terms of the contract, and also found that the entire plant was idle in consequence of the delay in delivery charged.

Counsel for appellant invoke the application of the principle that one against whom a contract to deliver chattels has been breached is bound to conserve his loss by going into the market and securing the article so breached in delivery.—*Ala. Iron Co. v. Hurley*, 86 Ala. 217, 5 South. 418; 1 Suth. on Dam. (3d Ed.) §§ 45, 46. At least one reason forbids the application of that doctrine here, viz., the evidence does not show that a Shay engine of the type described was readily obtainable in the market on this occasion. Furthermore, it is by no means certain that, if the duty had primarily rested on plaintiff to secure another Shay engine, and thus conserve loss, the defendant did not by repeated assurances of early delivery of the Shay engine relieve the plaintiffs of the hypothesized duty.

For the error resulting from the refusal of charge 6, requested by defendant, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, and MAYFIELD, JJ., concur. SAYRE, J., concurs in the conclusion.