*154
 
 THOMAS, J.
 

 The case was tried on counts 2, 3, and 4 against defendants Louisville & Nashville Railroad Company, a corporation, Southern Railway Company, a corporation, and Walker D. ■ Plines, as Director General of Railroads. The first, fifth, and sixth counts were eliminated by charges, as was also the Southern Railway Company as a party defendant.
 

 . Defendants made motion to strike parts of the several counts of the complaint; and though the ruling thereon is assigned as er■ror, it is not shown by the bill of exceptions or the judgment entry that action of the court was invoked on this motion.
 

 [1]
 
 Demurrer is not the pleading to raise the question of recovery for an improper element of damages. This should be done by a motion, appropriate objections to the evidence, or by special instructions to the jury. W. U. Tel. Co. v. Garthright, 151 Ala. 413, 44 South. 212; W. U. Tel. Co. v. Burns, 164 Ala. 252, 51 South. 373; Fitzpatrick v. Age-Herald Pub. Co., 184 Ala. 510, 63 South. 980, 51 L. R. A. (N. S.) 401, Ann. Cas. 1916B, 753. Under the instant pleading, the question of recoverable damage was expressly limited by the charge of the court to physical damages and in conformity to the rules obtaining- in interstate commerce. W. U. Tel. Co. v. Beasley, 87 South. 858;
 
 [1]
 
 W. U. Tel. Co. v. Hawkins, 198 Ala. 682, 73 South. 973; W. U. Tel. Co. v. Smith, 200 Ala. 65, 75 South. 393; Deavors v. Sou. Exp. Co., 200 Ala. 372, 76 South. 288.
 

 [2]
 
 Defendants pleaded not guilty and contributory negligence in that plaintiff failed to pay attention to the announcement of defendants’ employees that the train was leaving Decatur for Hartsells, and failed to board defendants’ train, although ample opportunity was given her for doing so. The carrier’s duty, “stated with reference to the necessities of this case, is to put its passenger down safely and on time at the point of his contract destination. In the absence of special circumstances known to the carrier, it need not be concerned about the passenger’s arrangements for the further prosecution of his journey.” A railway journey being taken for some ulterior purpose, a traveler, sustaining damages because of circumstances peculiar to himself, can recover therefor only when “he has given the carrier notice of the facts” of such peculiar circumstances. C. of Ga. Ry. v. Barnitz, 198 Ala. 156, 73 South. 471; 3 Sutherland’s Damages, §§ 938, 939.
 

 The fourth count charges:
 

 That defendants, as common carriers operating passenger trains for hire, on January 28, 1918, jointly maintained a union depot at Decatur, Ala., for use of their passengers, a ticket office, and a waiting room in which passengers are required to go in order to reach the ticket window of the office whore tickets are sold for trains operated by said defendants; that they maintained bulletin boards showing the schedule time of arrival and departure of all passenger trains over their roads and upon which they posted the time of arrival of trains when late, and on said date defendants kept, “in a conspicuous place on the wall in said waiting room, a clock which was kept running, and was kept for the use of their passengers, that said passengers might- keep themselves informed as to the correct time, and in order that said passengers might be informed as to when their trains would arrive and depart from said station.”
 

 It is further averred:
 

 That about 2 o’clock a. m. on the morning of said date plaintiff and her son-in-law, R. D. White, reached said station over a train of the Southern Railway from Little Rock, Ark.; that they wore accompanying the corpse of plaintiff’s son, who had died, and she was returning to her homo, carrying said corpse for burial; that “plaintiff and said corpse were being carried on tickets furnished by government authorities at Gamp Pike, Little Rock, Ark., from that point by Memphis, Tenn., over the Southern Railway Company to Decatur, Ala., and from Decatur to Hartsells, Ala., over the Louisville & Nashville Railroad Company, and plaintiff’s son-in-law, R. L. White, was riding on a ticket purchased by him from Little Rock, Ark.,
 
 to
 
 Decatur, Ala.; that, when plaintiff reached Decatur, Ala., the said R. L. White purchased his ticket from Decatur to Hartsells, and he and plaintiff then informed said agent that plaintiff had a ticket for herself and for a corpse for Hartsells, and inquired of the ticket agent from whom said ticket was purchased as to the time when the first train would leave Decatur upon which plaintiff and said corpse could go to Hartsells, and said agent, whose name is unknown to plaintiff, informed plaintiff that the train known as the morning accommodation train from Decatur, Ala., to Birmingham, Ala., upon which she should ride, and upon which said corpse would be carried, would leave defendants’ depot at Decatur at 6:30 a. m. of said date, to wit, January 28, 1918; that plaintiff continued to wait in the waiting room at said station or depot until 6:25 o’clock a. m., when plaintiff and her‘said son-in-law again inquired of said agent about said train, and whether or not it was on time; that said agent then and there told plaintiff that said train had left, and was then on its way to Hartsells, and that said corpse was on said train.”
 

 It is farther averred:
 

 That plaintiff was left in Decatur, and had no way or means of getting to Hartsells until the
 
 *155
 
 next train, about 3:30 o’clock p. m., reaching Hartsells about 4 o’clock p. m.: that said corpse reached Hartsells about
 
 7
 
 o’clock a. m., without any one accompanying it; that no arrangements had been made for any one to meet said train and take said corpse; that said corpse was unloaded on the trucks and permitted to remain thereon at the depot until late in the afternoon; that on account of plaintiff’s missing said train at Decatur she did not leave Hartsells until about 4 o’clock p. m., “whereas, if she had not missed said train, she would have loft with said corpse about 9 o’clock a. m.; that plaintiff’s home was about 25 miles in the country east from Hartsells; that the weather was very cold and the roads very muddy; that soon after leaving Hartsells upon said journey home it began to rain, and continued to rain and sleet on plaintiff throughout the entire journey; that plaintiff did not reach home until about 2 o’clock a. m. on January 29, 1918; that said corpse did not reach home until about 4 o’clock a. m. on January 29, 1918.”
 

 It is further averred:
 

 “That in going from Hartsells to her home, plaintiff was in the cold, rain, and sleet, traveling over muddy, rough roads, in the darkness, for 10 hours; that when she reached home she was almost frozen, and from said exposure she contracted grippe, and was confined to her room for months because thereof; that during all of the time while waiting at Decatur, and while on the road home, plaintiff knew that the corpse of hgr said son was being moved about unaccompanied, and was being hauled over muddy roads in the darkness of the night, so that plaintiff could not accompany the same, as was her desire; that because of the foregoing plaintiff suffered great mental and physical pain and anguish, was made sick and sore, and rendered unable to work.”
 

 It is further averred;
 

 That when plaintiff was informed “by said agent that said train would leave the station at Decatur, Ala., at 0:39 a. m., she consulted said clock kept and maintained by the defendants in said waiting room, and continually w'atched said clock for the purpose of determining when she should take said train; that when said clock showed the hour to be 6:25 a. m. plaintiff again asked the agent about said train, and said agent then informed plaintiff that said train had gone and was on its way to Hartsells; * * * that defendants negligently kept and maintained said clock, which erroneously indicated the time when said train would leave said station, and as a proximate consequence of said negligence plaintiff missed said train, and suffered said injuries.”
 

 [3]
 
 Respective counsel suggest that the case made
 
 by
 
 the fourth count is sui generis, and that diligent search failed to reveal any “clock case” as made in said count. The theory of such a case is not without analogy in our decisions. The lower court properly held that • defendants, as common carriers, were under no duty to furnish a clock in its waiting room for use of passengers, but, having undertaken to inform passengers the time by means of this clock, defendants were under the duty to exercise flue care in that behalf. Such was the holding in Birmingham Southern Railroad v. Harrison, 203 Ala. 284, 82 South. 534, 543, a ease of having installed and maintained mechanical signals at public road crossings, and educated or induced the traveling public to observe its warnings or directions. On failure of the device to act, in the absence of other sufficient notice or warning in llieu thereof, held, that the obligation to rebut the prima facie presumption of failure of the mechanical signal to act passed to the operator so using or giving warning by the signal. Vinson v. Sou. Bell Tel. Co., 188 Ala. 292, 66 South. 100, L. R. A. 1915C, 450, the safety gate eases, maintaining a flagman, etc. On the authority of Birmingham Sou. R. R. v. Harrison, supra, it was later held that, where a railroad company, though not required to maintain an automatic gong at a particular crossing, had established such gong and educated travelers to rely upon it, it is the company’s duty to give notice that it is not in working order or to keep it in efficient operation. Washington v. Birmingham Sou. R. R., 203 Ala. 295, 82 South. 545. The same principle was applied under different facts in Union Depot & Ry. Co. v. Londoner, 50 Colo. 22, 28, 114 Pac. 316, 318, 33 L. R. A. (N. S.) 433, 437, where it was said:
 

 “Among other things which the appellant undertook to do in the operation of its station was to direct passengers to their proper trains.”
 

 And the men through whom the appellant chose to perform the service of directing passengers to their proper trains directed plaintiff, Londoner, to the passageway wherein he received liis injury; defendant insisting that the person so directing plaintiff was not its agent, to which the court replied:
 

 “It availed itself and had the benefit of the service of these men, made them the agents or means for the performance of that particular part of its work which it had undertaken in the operation of its station, and it cannot now be permitted to say that Londoner had no right, so far as it was concerned, to follow the directions of .the agency which it adopted and used as, the means through which it gave directions.”
 

 See, also, many authorities collected in L. R. A. 1916D, 788 et seq.
 

 [4]
 
 In the case at bar defendants are liable for misdirection or misinformation given their passengers by means of the agency of the clock maintained iu the depot at Decatur, as they would have been for the misinformation of a servant employed for that particular purpose. One of defendants’ witnesses testified as to his maintenance of the clock in the said waiting room at the time
 
 *156
 
 indicated in the complaint; that now and then he found it was not keeping time and would set it to the standard time. There was other evidence that the clock had been allowed to run from seven to ten minutes slow on this occasion, and from which the jury could have found dereliction of duty on the part of defendants in keeping it properly regulated. The charge of negligence on
 
 the
 
 part of defendants was prima facie shown by the testimony of plaintiff that on this occasion said clock had been allowed to run from seven to ten minutes slow; and the burden of proof to rebut the prima facie presumption thereupon arising passed to the defendants. Birmingham Sou. R. R. v. Harrison, supra; Vinson v. Sou. Bell Tel. Co., supra.
 

 [5]
 
 The positive testimony of plaintiff’s witnesses is that on the morning in question the passenger train of defendant Louisville & Nashville Railroad Company left Decatur at 6:23 o’clock; that is, the time of its leaving was 6:23, as indicated by the clock in said waiting room at defendants’ passenger depot. Since this clock was an instrumentality or facility furnished by the defendants for the purpose of notice or warning to passengers, it was in the nature of an admission by defendants that the train left its depot at that time, to wit, 6:23 a. m. The preponderance of the evidence was to the effect that the standard or actual time at which the train left Decatur was 6:30, schedule time. This conflict in the evidence made a question for the jury, and the defendants were not entitled to the affirmative charge under count 2, the gravamen of said count being:
 

 “And plaintiff avers that the agent of the defendants in charge of said accommodation train scheduled to leave their station at Decatur, Ala., at 6:30' o’clock a. m. on the morning of January 28, 1918, left said station with said train at 6:20 o’clock a. m. on said date, ten minutes before it was scheduled to leave, and as a proximate consequence thereof plaintiff missed said train, and was thereby caused to suffer the injuries complained of.”
 

 [6]
 
 Defendants’ insistence of the affirmative charge on the theory of contributory negligence was not sustained. Plaintiff was not negligent as a matter of law in sitting in the waiting room beyond the departure of the Louisville & Nashville train to Hartsells, if she so remained in reliance upon the time as shown by the clock in the waiting room, and undertook to hoard the train according to said clock, seven minutes before the schedule time of its leaving. Within that seven minutes, the evidence shows, she would have had ample time to repair from the waiting room to the passenger train on the track 60 feet therefrom. Plaintiff’s evidence was to the further effect that no notice was given in the waiting room that the train was about' to depart. It was not shown, and the evidence was without conflict, that any announcement or signal given or displayed by the flagman at the trains could not have been heard or seen in the waiting room where the plaintiff was. Plaintiff cannot be charged as a matter of law with contributory negligence when she did what she cou-ld reasonably be expected to have done to inform herself of the time of departure of the train, and relied upon the information furnished her by the defendants’ agency or instrumentality.
 

 The charge, refused to defendants, that plaintiff was not entitled to recover damages on account of the corpse not reaching home until about 2 o’clock on the morning of January '29, 1918, was fully covered by the oral charge and by the written charge given for defendants that, since the action grew out of an interstate contract, damages for mental pain and anguish were not recoverable. Such was the effect of defendant’s given charges C, 44 and 45, and of the oral charge to the effect that plaintiff was not “entitled to recover what the law terms damages for mental suffering.”
 

 [7,8]
 
 Defendants requested in writing, and were refused, charge 27, as follows: “That the plaintiff cannot recover
 
 pnmyive
 
 damages in this case.” In refusing the charge, the judge indorsed thereon, as a ground for refusal, that the word “punyive” was used instead of “punitive.” This is sufficient to justify the action of the trial court. On the other hand, the oral charge as to the measure of damages by implication and limitation excludes the idea that punitive damages were recoverable or were sought.
 

 [9,10]
 
 The oral charge excluded recovery for mental suffering and submitted a recovery for physical suffering and inconvenience. Count 3, on which . submission was had, was based on the idea of violation of the contract; while count 4 was based on negligence growing out of the duty of the carrier. Hence, under count 3, inconvenience, physical suffering, and consequent sickness, suffered as a proximate consequence of being left at the station at the time and under the circumstances indicated, would be elements of damage. E. T., V.
 
 &
 
 G. Ry. v. Lockhart, 79 Ala. 315; L. & N. v. Dancy, 97 Ala. 338, 340, 11 South. 796. Under count 4 the damages recoverable on account of defendants’ negligence are stated in Armstrong v. Montgomery St. Ry. Co., 123 Ala. 233, 249, 26 South. 349, 354, as follows:
 

 “The logical rule in this connection, the rule of common sense and human experience as well, is that a person guilty. of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have
 
 *157
 
 been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. 1 Shear. & Red. Negligence, § 29.”
 

 The announcement of proximate cause and responsibility for damages resulting therefrom in the Armstrong Case has been followed. L.
 
 &
 
 N. v. Quick, 125 Ala. 553, 563, 28 South. 14; A. G. S. v. Arnold, 80 Ala. 600, 2 South. 337; K. C., M.
 
 &
 
 B. v. Foster, 134 Ala. 244, 254, 32 South. 773, 92 Am. St. Rep. 25; W. Ry. of Ala. v. Mutch, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Cent. of Ga. Ry. Co. v. Barnitz, 198 Ala. 156, 73 South. 471.
 

 [11]
 
 The joint usage of the terminal facilities at Decatur (and its union depot and station) by the defendants raised a joint duty to maintain this station, agency, etc., and subjected to liability to passengers injured by a failure of duty as to same, as though the station was severally maintained. 10 Corp. Jur. 882, § 1319, and notes; Chicago, etc., Ry. v. Gates, 61 Ill. App. 211.
 

 ■ The foregoing is decisive of the many questions on the introduction of the evidence, and a further detailed discussion of the samé is unnecessary.
 

 Charge 3, requested by defendants, that plaintiff would not be entitled to recover damages in this case by reason of the failure of any one to accompany the corpse of her son to Hartsells, was fairly and fully covered by the instructions of the court to the effect that damages may not be awarded for mental anguish.
 

 The rule as to damages in cases where passengers were carried beyond their destination was recently discussed by this court in Cent. of Ga. Ry. Co. v. Barnitz, supra. And it is declared that, where the special circumstances are known to the carrier, who has “actual notice of the conditions” and of the “probable consequences,” it is concerned about the passenger’s arrangements for the “prosecution of his journey.” Waldrop v. N., C. & St. L. Ry., 183 Ala. 226, 62 South. 769. See, also, Georgia Life Ins. Co. v. Easter, 189 Ala. 472, 66 South. 514, L. R. A. 1915C, 456; Sou. Iron & Equip. Co. v. Holmes Lbr. Co., 164 Ala. 517, 526, 51 South. 531; Sou. Ry. Co. v. Coleman, 153 Ala. 266, 44 South. 837.
 

 [12]
 
 The special circumstances of plaintiff’s journey to Hartsells were declared by the pleading to have been disclosed to defendants, and it was shown by the evidence that defendants’ agent at Decatur was informed of such special and pertinent circumstances. .Though the evidence shows her long detention in Decatur, that during the evening of January 28th the weather changed materially in its inclemency, affecting the way and conditions -under which plaintiff was put off at Hartsells to go on her way, that it was materially different from that which obtained had she been carried there at 7 o’clock in the morning pursuant to schedule and specific information given her by defendants’ agent in the discharge of the duties of his employnient, yet defendants’ contract with plaintiff was for transportation to Hartsells, with due dispatch and by ordinary or reasonable course of schedule of the train arriving at that point on the morning of January 28, 1918, under the special circumstances or purpose declared in the pleading and of which defendants had due notice. However, the evidence failed to show that defendants were informed that plaintiff’s ultimate point of destination was not Hartsells, but that an additional journey was to be prosecuted from that point. We are of opinion that reversible error was committed in the refusal of written charges 8, 9, 10, and 15.
 

 Reversed and remanded.
 

 ANDERSON, C. J., and McOBEBBAN and SOMERVIBBE, JJ„ concur.
 

 [1]
 

 Ante, p. 115.