June Term,
1860.

HINCKLEY and another vs. BECKWITH and another.

HINCKLEY et al.
v.
BECKWITH et al.

In an action against the lessors of a saw mill for a breach of their contract to re-pair, whereby the mill was rendered useless to the lessees during the latter portion of their term, it appeared that the lessees, at the time of the stop-page, had logs of their own in the mill-yard sufficient to stock the mill for one-half of the balance of their term, which they were compelled to haul to another mill to be sawed: *Held*, that the lessees were entitled to recover as damages, the amount paid by them for hauling their logs to such other mill, and the cost of getting them sawed there above what it would have cost to saw them at their own mill; and also the profits which they would have made from manufacturing lumber in that portion of their term during which they lost the use of the mill through the fault of the defendants, deducting the time which it would have required to saw the logs which they had so hauled to the other mill; to which interest might have been added, at the discretion of the jury.

| 13 | 31 |
| 86 | 276 |
| 13 | 31 |
| 87 | 48 |
| 13 | 31 |
| o111 | 197 |
| 13 | 31 |
| 53 LRA | 102n |

APPEAL from the Circuit Court for *Waupacca* county. The case will appear from the opinion of the court. There was some evidence tending to show that after the machinery in the mill leased by the defendants to the plaintiffs, stopped running, the defendants took it down and used portions of it in a new mill which they were then constructing.

*Wheeler & Kimball*, for appellants:

1. The plaintiffs were not entitled to recover as damages, the profits which they might have made from the mill dur-ing the portion of the term which still remained at the time of the break-down. Allowance of damages upon the basis of a calculation of profits is inadmissible. Sedg. on Dam., 78, 79; 16 N. Y., 489. 2. Nor were they entitled to pay for the extra labor in hauling their logs in the yard to an-other mill to be sawed; and the cost of sawing the same over and above what it would have cost them to manufacture the logs into lumber at their own mill. Such damages did not enter into the contemplation of the parties when they made their contract. Sedg. on Dam., 75, 98, 99; 2 Wis., 429; 3 id., 569, 460; 21 Wend., 342; 16 N.Y., 489. 3. The allow-ance of interest as a part of the damages, should at least have been left to the discretion of the jury. Sedg. on Dam., 392. As to allowance of interest on unliquidated damages, see 8 Johns., 213; 15 id., 24, 409; 3 Cow., 436; 18 N. Y., 462. 4. The plaintiffs should have made the repairs themselves,

June Term,
1860.

Hinckley et al.
v.
Beckwith et al.

when the defendants neglected to do so, if they could make them with reasonable expense or exertions. 21 Wend., 461; 3 Wis., 569. Their measure of damages would then have been the actual cost of the repairs. Sedg. on Dam., 202–4; 2 Met., 515. Not having made the repairs when it was their duty to do so, and having abandoned the mill, and thereby caused the defendants a loss of more in rent than the probable profits of the plaintiffs, the latter are not entitled to recover at all.

*W. C. & H. G. Webb*, for the respondents, cited as to the right of the plaintiffs to recover for profits and advantages lost by the failure of the defendants to repair, *Masterton vs. Mayor of Brooklyn*, 7 Hill, 62; 3 Barb. (S. C.), 288; 6 id., 423; Sedg. on Dam., 73–76, 79; *Griffin vs. Colver*, 16 N.Y., 489. 2. As to their right to recover interest, 1 Am. Leading Cases, 503–505, and cases there cited. 3. The plaintiffs are not in fault for refusing to make the repairs, because the defendants not only refused to make them, but actually took the mill down and used the machinery elsewhere before the plaintiffs' term expired.

November 19.    *By the Court*, COLE, J.  Although a number of exceptions were taken upon the trial of this cause, to the ruling of the circuit court upon the admission or exclusion of certain testimony, still we do not consider it necessary to notice them at length, and shall therefore confine ourselves chiefly to an examination of that portion of the charge upon the question of damages, which was as follows: The circuit court charged the jury that if they found the plaintiffs were entitled to recover, then they were entitled to recover pay for the profits of the mill for the unexpired portion of their term; also to pay for extra labor in hauling the logs in the yard to another mill to be sawed, and the cost of sawing the same over and above what it would have cost the plaintiffs to have manufactured them into lumber at their mill; upon which sum (the profits of the mill for the unexpired portion of the lease, the extra labor in hauling the logs to another mill, and the extra cost of sawing the same), the plaintiffs were enti-

June Term,
1860.

HINCKLEY et al.
v.
BECKWITH et al.

tled to interest from the time of the expiration of the lease to the present time.

The action was brought to recover damages for the breach of an agreement to repair contained in a lease of a saw mill. The appellants had leased their steam saw mill to the respondents for one year from November 21st, 1853, and among other things agreed to make all repairs which should cost over five dollars and which it would be necessary to have made to keep the mill and machinery in a proper running condition. About sixty days before the expiration of the lease the engine gave out, and the appellants refused to repair it. It appeared that it would have cost more than five dollars to repair the engine. At the time the mill stopped the respondents had in the yard, ready to be sawed into lumber, about six hundred logs. These logs the respondents had to draw several miles to another mill to be cut up into lumber. One of the respondents testified that the use of the mill was worth $10,50 per day for sawing lumber by the thousand, and that it would have been worth that sum for the residue of the lease had it been kept in repair. He further stated that the mill averaged for 60 days before the break down 7,500 feet per 24 hours, and that the cost of manufacturing lumber at the mill was $2 per M. He also testified that it cost $3 per M to manufacture the 600 logs into lumber at the mill to which they were hauled, and that three of the logs would make a thousand feet of lumber. Under the instructions of the court as to the rule of damages the jury rendered a verdict for $1,809, in favor of the respondents. It is quite apparent that the jury must have allowed the respondents for the use of the mill for the unexpired term $10,50 per day; also the extra labor or expense of drawing the 600 logs to another mill to be sawed, and the cost of sawing the same over and above what it would have cost the respondents to manufacture them into lumber at their mill, and interest upon these several sums from the expiration of the lease to the time of trial. Was this the correct rule of damages applicable to the facts of the case? We think not. From the lease we are satisfied that it was the duty of the appellants to make all necessary repairs which

should cost over five dollars. This they had expressly stip-
ulated and agreed to do. Their counsel contend that the re-
spondents should have repaired the mill and occupied it for
the remainder of the term. Whether the respondents would
have had a right, under the lease, to make these repairs and
charge the lessors with the expense, it is not necessary to de-
termine. They did not choose to make the repairs, and they
were under no obligation to make them. The evidence
shows that the injury to the engine was serious, and it is
questionable whether it could have been easily repaired.
Certainly it would have taken some time to repair it, and
there was only two months of the lease unexpired. The
parties expressly agreed who should make certain repairs.
All costing over five dollars were to be made by the lessors.
It was their duty then to repair the engine. Not having
done so, what damages should they pay for the breach of
their agreement? In the first place, we can see no objection
to giving the respondents the fair value of the use of the
mill for the unexpired portion of the term, subject to the
qualification hereinafter mentioned. The mill was of no sort
of use to them except to manufacture lumber. And when
the motive power gave out nothing further could be done
with it. One of the respondents testified that it was worth
for the residue of the term $10,50 per day, to manufacture
lumber. This being so, why ought they not to recover dam-
ages at that rate during the continuance of the lease, except-
ing therefrom the time they would use it to saw their own
logs? We know of no sound principle of law or reason
which would be violated in permitting them to do so. It is
said that this would be allowing damages on the basis of a
calculation of profits, which, it is contended, is inadmissible.
But the case of *Griffin vs. Colver*, 16 N. Y. R., 489, to which
we are referred by the counsel for the appellants, fully sus-
tains the rule we have laid down. That was an action upon
the breach of a contract to deliver, at a certain day, a steam
engine built and purchased for the purpose of driving a pla-
ning mill and other definite machinery, and the court held
that the ordinary rent or hire which could have been obtained
for the use of the machinery when operation was suspended

for want of the steam engine, might be recovered in dama-
ges. In delivering the opinion of the court in that case, Jus-
tice SELDEN uses the following language, which we think
quite apposite to the point we are now considering: "The
broad, general rule," says the judge, "in such cases is, that
the party injured is entitled to recover all his damages, in-
cluding gains prevented as well as losses sustained; and this
rule is subject to but two conditions: The damages must be
such as may fairly be supposed to have entered into the con-
templation of the parties when they made the contract, that
is, must be such as might naturally be expected to follow its
violation; and they must be certain both in their nature and
in respect to the cause from which they proceed." In the
present case it was very easy to ascertain the profits which
were the direct and immediate results of operating the mill
for sixty days. The respondents had logs enough on hand
to stock the mill for about one half of that time, and timber
standing near the mill sufficient to supply it for the rest of
the time. What therefore could be made in running the
mill per day, over and above all expense of rent, labor, &c.,
was susceptible of exact and definite proof. It is not like
profits anticipated from being able to perform some depend-
ent and collateral undertaking to the principal business of
running the mill, but related to gains or profits arising from
the business itself, and constituting a portion of the contract.
The respondents, when they rented the mill, considered what
it would be worth to them per year, or month, &c. The
profits upon the manufacture of lumber were so much per
thousand, and it was therefore an easy matter to ascertain
the gross earnings of the mill. We therefore suppose the
profits or earnings of the mill would constitute a proper item
in estimating the damages resulting from the breach of the
agreement to repair. *Masterton vs. The Mayor, &c., of Brook-
lyn*, 7 Hill, 61; *Blanchard vs. Ely et al.*, 21 Wend., 342.

When the mill stopped, the respondents had likewise on
hand some 600 logs, which they were compelled to draw to
another mill to be sawed. The circuit court instructed the
jury that the respondents were entitled to recover for the
extra labor in hauling these logs to another mill to be saw-

ed, and the cost of sawing the same above what it would have cost them to manufacture them into lumber. These damages were the direct and proximate result of the breach complained of, and were properly allowed. See *Driggs vs. Dwight*, 17 Wend., 71; *Blanchard vs. Ely, supra.*

But it will be observed that while the respondents were allowed damages for the use and occupation of the mill, at the rate of $10,50 per day for the unexpired term of their lease, they were not charged with what it would have cost them to manufacture the 600 logs into lumber at their own mill. According to the testimony of one of the respondents it would have cost them $2,00 per thousand feet, and it would have taken them about a month to saw up the 600 logs. Now it is very clear that they should either not recover for the use of the mill during the time they would have necessarily employed it in sawing their own logs, or they should be charged with the expense of sawing them. Otherwise they recover double damages. To make this the more obvious, suppose the respondents, when the engine gave out, had had logs enough on hand to have stocked the mill during the remainder of their term. Then had they run the mill, their profits for the use and occupation thereof would have been in their lumber manufactured. But suppose when the mill failed, the appellants, instead of repairing it, as they agreed to do, had elected to have sawed for the respondents just this amount of lumber, at what it would have cost them to manufacture it at the leased mill, how, then, could the latter have been injured by the breach of the contract? Obviously they would not have been injured at all. For they would have the same quantity of lumber, and at precisely the same cost to themselves, as though they had manufactured it at the mill which they had leased of the appellants. So it is manifest that the proper rule for estimating this portion of the damages in the case was not to allow the respondents $10,50 per day for the use of the mill for the time it would have taken them to saw their own logs. We have assumed all along that $10,50 per day was a fair and reasonable value for the use of the mill, because this was the highest estimate placed upon it at the trial.

But, of course, this is entirely a matter to be determined by the jury upon the evidence relating to that point.

The circuit court likewise told the jury that the respondents were entitled to interest upon the several items of their claim from the expiration of the lease to the time of trial. It might have been more accurate to have instructed them that it was discretionary with them to give interest or not. The rule is thus laid down upon this subject by Judge WASHINGTON, in *Willings et al. vs. Consequa*, Peters C. C. R., 172: "It is generally in the discretion of the jury to give interest in the name of damages; although it is not conformable to legal principles to allow it on unliquidated and contested claims, sounding in damages." This discretionary rule has been applied to many cases of unliquidated demands arising upon contract, where the delinquency of the party in default has been such as to warrant the jury in giving interest as damages. *Dox et al. vs. Dey*, 3 Wend., 356; *Willings vs. Consequa, supra; Gilpins vs. Consequa*, Peters, C. C. R., 95; *Watkinson vs. Laughton*, 8 Johns., 213; *Amory vs. McGregor*, 15 id., 23; see also *Walrath vs. Redfield*, 18 N.Y., 458; *Delavan Ins. Co. vs. Delaunie*, 3 Binney, 295; *Uhland vs. Uhland*, 17 S. & R., 265; Sedg. on Dam., 386.

We think, within the above authorities, it was in the discretion of the jury to give interest in the name of damages in this case.

But for the reason already given, the judgment of the circuit court must be reversed, and a new trial ordered.