EZRA BOSTWICK v. ALBERT LOSEY, SURVIVOR, ETC.

*Landlord and tenant—Neglect of lessor to observe covenant to repair —Abandonment of premises—Suspension of rent—Damages.*

1. The neglect of the lessor of a water-power saw-mill to keep the flumes in repair pursuant to the covenants in the lease, by reason of which neglect the mill is rendered useless to the lessees, justifies them in abandoning the leased premises, and bars the *after* recovery of rent.

2. In *such* a case it is not the duty of the lessees to make the necessary repairs, and they have the right to recover of the lessor the damages resulting from his failure so to do, which are measured by the difference in the value of the *use* of the mill if the repairs had been *seasonably* made, and such value without *such* repairs.

Error to Branch. (Pealer, J.) Argued October 28, 1887. Decided November 10, 1887.

Assumpsit. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*George Styles,* for appellant.

*Barlow & Loveridge,* for defendant.

MORSE, J. The plaintiff rented to the defendants, Losey and Burton, for a period of five years from and after January 1, 1880, a certain saw-mill in Union City at the rate of $500 per year. If the average of the logs in the mill-yard did not reach 300,000 feet each year, then the rent was to diminish as the $500 was to 300,000 (for example, if there were 200,000 feet only, the rent was to be $333.33). Plaintiff agreed to—

"New roof the mill, and repair the flume, when necessary, doing the work expeditiously, so as to not interfere with the running of the mill longer than was necessary."

He was also—

"To repair the foundation of the mill, should it give way, not including, however, the temporary underpinning of the machinery below, or that under the slab-pile outside, or the board-way."

Defendants were to leave the machinery belonging to plaintiff in good repair at the end of the five years, allowance being made for natural wear and tear, and keep the mill and machinery in order at their own expense.

Defendants occupied the mill under this agreement until May 15, 1884, when they quit and abandoned the premises, claiming that plaintiff had not kept his covenants as to repairs. At the end of the first two years there was a settlement between the parties, and all accounts in relation to the mill closed and determined for that time.

The plaintiff brought suit for the amount of the rent due according to the terms of the contract, claiming $1,500 for such rent. He also averred negligence of the defendants in running the mill, and their failure to care for and keep the same, and its machinery, in repair, and claimed damages in this respect of $1,000; also $200 damages by reason of the defendants' failing to give him proper accommodations for sawing his lumber, lath, and other timber according to the agreement, which provided that defendants should saw all logs for plaintiff, hauled from his lands, at certain specified prices.

The defendants pleaded the general issue, and gave notice that the amount of the logs in the yard did not reach 300,-000 feet in any year; that the plaintiff failed to keep his contract, in that he neglected and refused to put a new roof on the mill, to repair the flumes, or the foundation of the mill; and by reason of this neglect and refusal the mill became utterly worthless and useless to defendants, and the water-power was lost, to their damage of $3,000; also that the foundation of a portion of the mill gave way, by which they also sustained damage.

Upon a trial before Hon. Russel R. Pealer, with a jury, in the circuit court for the county of Branch, the defendants recovered judgment in the sum of $771.81.

The plaintiff brings error.

It is evident from the record that but a very small portion of the evidence taken upon such trial is contained in the bill of exceptions; nor does said bill anywhere aver that all the testimony is set forth in the record upon any given point.

This fact of itself disposes of some of the errors alleged. For instance, it is claimed that the court erred in admitting the testimony of two witnesses, Clark and Kerr, as to the value of water-power at Union City, when they lived at Coldwater, and substantially admitted that they knew nothing of the value of water-power at Union City, where this mill was located, and had never seen the water-power in question. One testified that the use was worth $5 per day, and the other that it would be worth from $4.50 to $5.

We find in the charge of the circuit judge the following:

"In considering the question, you have the value of the use of the water-power. This is a matter for you to determine from all the evidence. You have the testimony of the *plaintiff* and defendant themselves, that it is worth from $6 to $7, and the testimony of other witnesses fixing a different range."

The record does not purport to give all the testimony of the plaintiff. On the contrary, it plainly appears that only a small portion of his evidence is contained therein. It must therefore be presumed, considering this charge of the judge, which is not excepted to or questioned, that the plaintiff himself testified that the water-power was worth from six to seven dollars a day. If so, he cannot complain because Clark and Kerr were permitted to swear it was worth less. Nor, if he testified on his own behalf upon his direct examination that it was worth this amount, can he complain that the defendant was permitted to testify as to its value. From the record we cannot tell when the plaintiff testified to the value

of the use of the water-power, and, as we cannot presume error, we must hold that the objection to the defendant Losey's evidence of such value was properly overruled.

The main allegations of error are based upon the instructions of the court to the jury, and his refusal to give certain requests asked by plaintiff's counsel.

The contention is that the defendants had no right to abandon the premises because of the plaintiff's neglect to repair, and that they could not recover for the damages sustained by them while in the use of the mill, because of such neglect; that it was their duty in case plaintiff did not new-roof the mill, and repair the flume and foundation, to repair the same themselves, and charge the expense thereof up to the plaintiff in reduction of the stipulated rent; also that the value of the use of the water-power was not the proper measure of the damages suffered by the defendants.

Upon the trial it was conceded that there were 300,000 feet of logs in the mill-yard each year, and the issue in that respect is not here.

It appears beyond question that the flume was defective. The plaintiff testified that, when they settled for the first two years, an allowance was made to defendants for the damages resulting from the defects in the flume. He also admitted that in the fall of 1882 defendant Losey asked that the mill be repaired, but that he failed to repair it.

The testimony on the behalf of the defendants tended to show that they lost the use of the water-power for a large number of days, by the plaintiff's not making repairs upon the flume, and that the water had become perfectly useless, and that, if the plaintiff had repaired the flumes, so that defendants could have had the full benefit of the water-power, the use of it would have been worth $600 or $700 per year; that they had to put in steam-power in order to run the mill.

The question to be determined on their theory is, what were the defendants' rights and duties in the premises? Had they the right to abandon the premises because, without the repairs covenanted by the plaintiff, the water-power was useless, and to recover damages for the difference in the value of its use between what it would have been if the repairs had been seasonably made, and what it was without the repairs, as the circuit judge instructed the jury; or was it their duty, when the plaintiff refused to make the repairs, to go on and repair the flumes themselves, and charge the expense thereof, and the value of the time the mill remained idle while the work was going on, to the plaintiff?

What the defendants contracted for was the use of the saw-mill, and the saw-mill was dependent in its use upon the water-power which propelled it. The plaintiff covenanted to keep the flumes, through which the water passed to the mill, in repair. If he neglected or refused to do this when notified, and on account of such neglect the water-power was destroyed, and the mill thereby rendered useless to the defendants, the consideration of the agreement or lease failed, and the defendants were justified in abandoning the premises, and the stipulated rent could not be recovered after such failure of consideration. *Tyler v. Disbrow,* 40 Mich. 415; Wood, Land. & Ten. § 377; *Hinckley v. Beckwith,* 13 Wis. 34.

Nor were the defendants bound to make the repairs themselves. It was the duty of plaintiff, under the agreement, to make these repairs, without which the premises were of but little or no value for the use defendants required, and to which they were entitled under the contract. The defendants had the right to hold the plaintiff to the ordinary responsibility of a party failing to perform his agreement, to wit, to pay the damages caused by such failure. We can see no difference in this respect between this and any other contract. *Hinckley v. Beckwith,* 13 Wis. 31, 17 Id. 413; *Myers v. Burns,* 35 N. Y. 269; *Hexter v. Knox,* 63 Id. 561.

The rule of damages was properly laid down by the court.

The failure of the water-power was the grievance complained of. The defendants were entitled to the use of it, as it would have been had the flumes been kept in repair, for saw-mill purposes. The value of the use of such water-power for such purposes was shown by witnesses. We do not consider that such value was speculative or uncertain, or that showing such value and allowing it as the basis of damages was in effect permitting the profits of the saw-mill to be computed in estimating the damages. The contract or lease itself shows that this water-power had a rental value, and we can see no serious difficulty in the way of ascertaining to a tolerable and sufficient certainty the value of this use, to which the defendants were entitled by their agreement.

It was also conceded on the trial that there were logs in the mill-yard ready to be sawed, so that work was at hand for the mill, if the water-power was available.

The judgment is affirmed, with costs.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.