J. L. PIPER AND R. D. PIPER, Appellees, v. I. C. FLETCHER AND CHAS. RAMSEY, Appellants.

**Landlord and Tenant:** *Construction of covenant to repair.* Where a lessor lets a building for a particular purpose, and covenants to repair it, he must put it in such a state of repair as the business requires, whether the defects existed at the date of the

lease, or arose from defects in construction, or from general dilapidation.

BREACH OF COVENANT: *Rights of lessee.* Where leased premises are untenantable and unsuitable for purposes for which they were rented, owing to the failure of the lessor to repair in accordance with an express covenant, the lessee may abandon the premises and have cancellation of the lease.

CANCELLATION OF LEASE: *Tender to pay rent due.* The fact that the lessee failed to pay rent due on abandonment of the premises will not preclude a recovery in a suit for cancellation of the lease on account of the premises being untenantable, where a tender was made before the commencement of suit, and the petition averred a readiness to pay all unpaid rent due.

*Appeal from Lucas District Court.*—HON. F. W. EICHEL-BERGER, Judge.

SATURDAY, DECEMBER 21, 1901.

Suit in equity to cancel a lease, and to enjoin defendant Ramsey from prosecuting an action against the plaintiffs for the recovery of rent before a justice of the peace of Lucas county. The trial court granted the relief asked, and defendants appeal.—*Affirmed.*

*J. A. Campbell* for appellants.

*Stuart & Stuart* for appellees.

DEEMER, J.—January 20, 1898, plaintiffs leased of the defendant Fletcher a brick storeroom in the town of Oakley for the term of five years at the agreed yearly rental of $162.50. The following is a true copy of the lease: "Oakley, Iowa, Jan. 20, '98. J. C. Fletcher, party of the first part, leases to R. D. Piper and J. L. Piper, parties of the second part, the new brick storeroom, 20x60 feet, situated in the village of Oakley, county of Lucas, and state of Iowa, for a period of 5 years from March, 1898, at an annual rental of $162.50; the same to be paid monthly. The said room to be furnished with counters, shelves, etc., and kept in repair by party of the first part.

J. C. Fletcher. R. D. Piper. J. L. Piper." The build-
ing was in course of construction at the time the lease
was executed, and was not completed and ready for occu-
pancy until about March 2, 1898. Fletcher represented
that he would finish the storeroom in first-class shape; would
fit it with adjustable bracket shelves, and with counters
and drawers suitable for a general country store. When
plaintiffs moved·into the building they found but one rough
coat of plastering on the walls, which was soft and would
easily crumble; that the counters were made of green elm·
lumber and rough pine boards; and that there was no
drawers as promised. Plaintiffs objected to these matters,
and defendant informed them that the fixtures were tem-
porary; that he had purchased other good shelving, which
he would put in; and that he would paper the walls. These
promises were never fulfilled. Thereafter, and about Jan-
uary 1, 1899, Fletcher sold the premises to his co-defendant
Ramsey, and plaintiffs attoonrned to him. After his pur-
·chase, plaintiffs demanded of Ramsey that he make the
repairs as promised; but he refused to do so, claiming that
he was not bound by the covenants in the lease. Plaintiffs
·claim that during the years 1898 and 1899 their goods
were seriously damaged by sand and dirt falling from the
imperfect plastering, and that in September of the year
1899 the walls began to crack and spread away from the
joists; that these cracks increased in number and size, and
that the walls so spread as that the ends of the joists on
the second floor became plainly visible; that the lower joists
at one end of the building became rotten, and some of them
broke down, causing the floor to settle in places from 8 to
10 inches; and that this process continued until about the
14th of October, 1899, when they vacated the building and
surrendered the same to the defendants because of its un-
tenantable and unsafe condition. After giving notice to
defendants of the vacation of the property, plaintiffs com-
menced this action to cancel the lease. After the com-

mencement of the suit, defendant Ramsey brought action against plaintiffs before a justice of the peace to recover the rent alleged to be due. Thereupon plaintiffs secured a writ of injunction restraining the prosecution of that action.

Much is said in argument about implied covenants between landlord and tenant, but as there was an express covenant to repair in this case, and an agreement as to how the room should be furnished, this discussion is entirely foreign to the case. Where a lessor lets a building for a particular purpose, and covenants to repair it, it is his duty to put it in such a state of repair as the business requires; and it is not important whether or not the defects existed at the date of the lease, or arose from defects in construction or from general dilapidation. "Good repair and good condition at all times is the fair intent of the agreement." *Myers v. Burns,* 35 N. Y. 269; *Bass v. Rollins,* 63 Minn. 226 (65 N. W. Rep. 348); *Bentley v. Taylor,* 81 Iowa, 306; *Ward v. Robertson,* 77 Iowa, 159.

With these rules as to the construction of the covenants settled, the next question is the effect of a breach thereof. That the tenant may recover damages for breach of covenant to repair is well settled. He may also make the repairs himself, and charge the cost of the same to the landlord, or he may recoup his damages in an action by the landlord for rent. The covenant to pay rent and the covenant to repair are independent, however; and failure of the landlord to repair does not work a forfeiture of the rent, where the tenant remains in the possession and occupancy of the premises. *Young v. Burhans,* 80 Wis. 438 (50 N. W. Rep. 343). But if the landlord fails to repair, and in consequence the premises become untenantable, the tenant may abandon them and escape liability for rent. *Bissell v. Lloyd,* 100 Ill. 214; *Bostwick v. Losey,* 67 Mich. 554 (35 N. W. Rep. 246); *Lewis v. Chisholm,* 68 Ga. 40. To warrant an abandonment, however, it must

be shown that the premises became untenantable by reason of the landlord's failure to comply with his agreement. *Prescott v. Otterstatter*, 85 Pa. St. 534; *Blake v. Dick*, 15 Mont. 236 (38 Pac. Rep. 1072, 48 Am. St. Rep. 671); *Moore v. Gardiner*, 161 Pa. 175 (28 Atl. Rep. 1018). It is conceded that Ramsey, the purchaser from Fletcher, was bound by the covenants in the lease, and that his failure to repair is of the same effect as if he had been the original lessor. These principals of law are well established, and we need call attention to but one other before going to the facts, and that is the effect of plaintiffs' taking possession with knowledge of some of the defects. In *Swift v. Hotel Co.*, 40 Iowa, 323, it is expressly held that the tenant's taking possession of the property with knowledge of the defects and without objection will not bar his recovery of damages. In the instant case the tenants made objection when they took possession, and were promised that the defects should be remedied.

With the rules of law settled, we now turn to the facts, and find that we have to go through a so-called abstract of 672 pages to settle the single proposition, were the premises untenantable, dangerous to life or property, or otherwise uninhabitable, when plaintiffs abandoned them? This so-called abstract is no abstract at all. It is nothing more or less than a verbatim reprint of the transcript, containing the questions to the witnesses and the answers thereto, and every detail of the trial as disclosed by the translation of the shorthand reporter's notes. The whole case ought to have been presented in an abstract of not more than 50 pages. We have patiently gone over this transcript, although not obliged to do so, and, without setting forth the evidence on which we rely, content ourselves by stating that we reach the same conclusion on the facts as did the learned district judge. The premises were untenantable and unsuitable for the purpose for which they were rented when the plaintiff abandoned them; and the lease should be canceled, unless it be for the reason stated in appel-

lants' argument, to-wit, that plaintiffs failed to pay the rent due when they abandoned the room, and before commencing this suit. The evidence shows that plaintiffs before commencing suit made a tender of $6.38 to the defendants, which they claimed was the amount due as rent, and that they kept the tender good by depositing that amount with the clerk of the courts. They also averred in their petition a readiness to pay all unpaid rent due on the lease down to October 16, 1899. The answer was simply a general denial, and a prayer that the lease be declared to be in full force and effect. As the suit is in equity, averment of a readiness to perform is all that was necessary. *Clapp v. Greenlee,* 100 Iowa, 587. But, as the covenants were independent, we are disposed to hold that plaintiffs may have cancellation without paying the rent. See *Drago v. Mead,* 30 App. Div. 258 (51 N. Y. 360). It is agreed, that if the judgment and decree in the main case stand the injunctional decree shall also be affirmed. This disposes of the claim that without proper tender the injunction will not lie.

The decree is in all respects correct, and it is AFFIRMED.