# ORPHEUS VAUDEVILLE COMPANY v. CLAYTON INVESTMENT COMPANY.

No. 2401.   Decided December 3, 1912 (128 Pac. 575).

1. PLEADING—REFERENCE—INSTRUMENT ATTACHED TO COMPLAINT. Plaintiff may make the instrument which is the foundation of his action a part of his complaint by reference, and when this is done, and the instrument is attached to the complaint, the statements contained therein may for some purposes be considered in connection with the allegations of the complaint. (Page 611.)

2. CONTRACTS—MODIFICATION AND MERGER—MERGER IN SUBSEQUENT CONTRACT. Where the parties to an existing agreement subsequently enter into a new one completely covering the same subject-matter contained in the first, and the later agreement contains terms inconsistent with the first so that the two cannot stand together, the later agreement rescinds and supersedes the former, and constitutes the only enforceable agreement on the subject; but a new agreement with reference to the subject-matter of a former agreement does not supersede the former and destroy its obligation, except in so far as the new agreement is inconsistent therewith, when it appears from the two agreements and from the circumstances that the parties intended the new agreement to supplement, and not to supersede the old.   (Page 612.)

3. CONTRACTS—MODIFICATION OR MERGER—EXTENSION OF TIME. An agreement by which defendant was to construct and equip a theater building within a specified time, to be leased by plaintiff, and by which plaintiff agreed to lease the building, when completed and equipped, for a term of ten years at a rental of $60,000, was not merged or superseded by a contemporaneously executed lease in which, before delivery, the date of completion and the date from which rent should be payable were extended for three months, but the two are to be construed and enforced as one contract, since such construction preserves the manifest intention of the parties, and since the lease thus supersedes only such terms of the original agreement as were incorporated into the lease itself.   (Page 612.)

4. LANDLORD AND TENANT—COVENANTS AS TO CONSTRUCTION AND IMPROVEMENTS—ACTION BY TENANT—WAIVER OF RIGHTS UNDER COVENANTS. A lessee under an agreement for the lessor's erection of a theater, with covenants for its completion and equipment by a certain date, and for its lease for a term of ten years at a rental of $60,000 according to a formal lease contemporaneously executed and placed in escrow until completion of the building, who agreed to an extension of the time for com-

pletion from October 1st to November 30th, and who on December 25th when it was not completed or furnished according to the covenants, and in order to avoid a forfeiture of $2,500 to a third party, under protest and without waiving any of his rights under the agreement, took possession and accepted a lease in which the beginning of the term had been extended until the January 1st following, thereby waived only its right to object to the sufficiency of the equipment so far as completed, and did not waive its right to insist that the lessor had entirely omitted to furnish certain things required by the agreement, and was entitled in an action for its breach to recover at least nominal damages. (Page 614.)

5. PLEADING—OBJECTION TO INTRODUCTION OF EVIDENCE—ADMISSIONS. An objection to the introduction of any evidence in support of a complaint upon the ground that the facts stated therein are insufficient to constitute a cause of action is in legal effect a demurrer, and admits the allegation of the complaint. (Page 618.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Orpheus Vaudeville Company against Clayton Investment Company.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*Gustin, Gillette & Brayton* for appellant.

*Pierce, Critchlow & Barrette* for respondent.

FRICK, C. J. ·

This is an appeal from a judgment dismissing appellant's complaint. The judgment of dismissal is based upon respondent's objection interposed at the time of trial to the introduction of any evidence in support of the allegations of the complaint, upon the ground that the facts stated therein were insufficient to constitute a cause of action. The errors assigned are that the court erred in sustaining the objection and in entering a judgment dismissing the complaint.

In view of the foregoing, it becomes necessary to set forth, somewhat in detail, the material allegations of the complaint which are: That both parties are corporations. That on the 7th day of April, 1905, the parties entered into an agreement in writing, whereby in consideration of the appellant's promise to lease the building hereinafter mentioned for a period of ten years beginning October 1, 1905, at a rental of $60,000 for said term, payable as stated in the agreement, which agreement is specifically made a part of the complaint by reference, the respondent agreed "to completely build, erect, and equip at its . . . own cost, on or before October 1, 1905, in accordance with" certain plans and specifications to be approved by appellant, a certain theater building on certain property belonging to respondent in Salt Lake City, which property is fully described. That on the 27th day of April, 1905, the time for the completion and equipment of the building was extended, such extension being in writing and indorsed on said agreement from October 1, 1905, to the 31st day of said month, and thereafter, on the 12th day of June, 1905, the time for the completion and equipment of said building was in the manner aforesaid further extended until the 30th day of November, 1905. That no plans or specifications were ever submitted to appellant for its approval.

"That said building was not finished and completed by the 1st day of October, 1905, nor by the 30th day of November, 1905, to which date the period of the completion of the same had been extended, but that on or about the 25th day of December, 1905, defendant informed plaintiff the said building was fully completed and ready for occupancy, and that plaintiff might have possession of the same. That on or about the said last-mentioned date a written lease of said theater building, whereby the defendant leased the same to the plaintiff for a period of ten years, beginning October 1, 1905, and expiring on October 1, 1915, at the rental above, and in said agreement in writing mentioned, and in which plaintiff agreed and obligated itself to pay the same to defendant, was taken out of escrow, where it had been placed at the time of

executing said agreement by said plaintiff and defendant, and because of the delay in erecting said building the said lease by interlineation was changed, so as to provide that the term should begin January 1, 1906, and continue for a period of ten years from that date. That said lease so changed was by the defendant herein offered to the plaintiff. That at the time of the offering of said lease the plaintiff herein protested and objected to the defendant that said building was not completed according to the terms of said contract as hereinafter specifically set forth. That defendant refused to complete said building in the particulars hereinafter set forth, and plaintiff was, by reason of the facts hereinafter set forth, compelled to and did accept said lease, under protest as aforesaid, and not waiving any of its rights under said agreement in writing or otherwise. That on and prior to the 25th day of December, 1905, this plaintiff was under a large forfeit amounting, to wit, to $2500, to third parties in the event it failed to open the theater for a theatrical performance on the night of December 25, 1905, which the defendant then and there well knew. That on or about said 25th day of December, 1905, and upon being notified by the defendant that said theater building was fully completed and ready for occupancy, plaintiff because and on account of said forfeiture to the third party aforesaid, and in order to avoid the same, took possession of the same from defendant under protest and after objecting to the same as aforesaid. That at all times plaintiff was willing and ready to perform all on its part to be performed under said agreement in writing dated April 7, 1905, and frequently demanded of defendant the preparation and submission to it of a full and complete set of plans and specifications for said building, and the building, erection, and completion of the same in accordance with said contract. That in erecting, building, and equipping said theater building in accordance with said contract it was necessary and essential, in order that the same could be used for theatrical performances, that the same should be equipped with an asbestos curtain, a ticket office, and brass rail for same, a gridiron and rigging loft,

a manager's office, forty-eight chairs for theater boxes and stalls, and ceiling and wall decorations, all of which defendant at all times knew, and it became and was the duty of defendant herein to fully build, erect, and equip at the cost of defendant said theater building as hereinbefore set forth, but that defendant failed, neglected, and refused to perform said contract on its part to be performed as hereinabove set out, notwithstanding its duty so to do. That in order to complete the erection and equipment of the said building, and in order to put the building in such condition that it would be a theater building where theatrical performances might be given, and which it becomes necessary for the plaintiff so to do, and because of the failure of the defendant to perform its duties under said contract as hereinabove set forth, the plaintiff between the 25th day of December, 1905, and the last day of February, 1906, was compelled to and did install in said building, and was compelled to and did equip the same with, an asbestos curtain, ticket office, and brass rail therefor, manager's office, gridiron and rigging loft, forty-eight chairs for boxes or stalls, and ceiling and wall decorations at an expense and costs, to wit, of $2013.85, and that on or about the 1st day of July, 1906, it expended on further ceiling and wall decoration the further sum of $2000."

Upon the foregoing allegations appellant prayed judgment for the amount stated above.

Omitting the formal parts, the material portions of the agreement entered into between the parties to which reference has been made are as follows:

"The party of the first part hereby agrees to completely build, erect and equip at the cost of the party of the first part, in accordance with plans and specifications to be prepared by architect C. M. Neuhausen, at the expense of the party of the first part, which plans and specifications shall first be approved by the party of the second part, a theater building, which building shall be erected on that certain piece of land situate in Salt Lake City, Utah, and described

as follows, to wit: (Describing a certain piece of ground on State Street, between First and Second South Streets, Salt Lake City.) . . . The party of the first part further agrees that said building and entrance shall be completed and equipped in all particulars in accordance with said plans and specifications on or before the first day of October, A. D. 1905. The party of the first part hereby agrees to demise, lease and let the said theatrical building and entrance to the party of the second part for a term of ten years, commencing with the 1st day of October, 1905, and ending with the 1st day of October, 1915. The party of the second part in consideration of the covenants of the party of the first part hereby agrees to lease and rent from the party of the first part, the said building, premises and entrance for the term of years above specified and pay therefor as rental for said premises for said term the sum of sixty thousand dollars as follows, to wit: Ten thousand dollars to be paid to the party of the first part on the 1st day of October, 1905, seven thousand dollars of which shall be payment for the rent of said building and premises from the 1st day of October, 1905, to and including the 30th day of November, 1906, a term of fourteen months; the remaining three thousand dollars to be applied in full payment of the rent of said premises from the 1st day of April, 1915* up to and including the 30th day of October, 1915.* During the remainder of said term, that is, from the 1st day of December, 1906, until the first day of April, 1915, the party of the second part agrees to pay five hundred dollars per month, monthly in advance on the first day of each and every month, during said remainder of said term until the said sum of sixty thousand dollars shall have been fully paid. For the purpose of carrying into effect this agreement, the parties hereto have contemporaneously herewith placed in escrow with Wells Fargo & Company Bank of Salt Lake City,

---

(*Note.—Both of the years 1915 marked with a star seem to me to be wrong. We give them here as they appear in both the transcript and the printed abstract.)

Utah, the sum of ten thousand dollars, also a lease executed in duplicate by each of the parties hereto, which said money and lease are to be delivered by said Wells Fargo & Company Bank to the party entitled thereto under the terms of said escrow agreement."

We remark that under the practice prevailing in this jurisdiction the plaintiff may make the instrument which is the foundation of the action a part of his complaint by reference, and when this is done, and the instrument is attached to the complaint, the statements contained therein may for some purposes be considered in connection with the allegations of the complaint. In view of the objection that was interposed by the respondent, as aforesaid, and the ruling of the court thereon, the only question that we can determine is whether the allegations in the complaint are sufficient to entitle the appellant to any relief.

Counsel for respondent in this court seek to justify the ruling of the trial court upon substantially the following grounds: (1) That, by changing the dates of the lease by which the term was to commence and end three months later than originally agreed upon, the parties entered into a new agreement which in legal effect rescinded and superseded the original agreement; (2) that since there was neither an express nor implied covenant in the new lease (agreement) which required the respondent to supply the things for the equipment of the building that are enumerated in the complaint, it is not liable; and (3) that in taking possession of the building respondent waived its right to sue upon the covenant to complete and equip the same, if it be found that such a covenant in fact exists.

In support of the first ground counsel for respondent vigorously insist that the transaction between the parties to this case is governed by the following rule, to wit: That where the parties to an existing agreement subsequently enter into a new one completely covering the same subject-matter contained in the first, and the later agreement contains terms inconsistent with the first one so that the two

cannot stand together, the legal effect of the later
agreement is to rescind and supersede the former, and
the later one constitutes the only agreement upon the subject
enforceable between the parties. The rule that there cannot
be two inconsistent enforceable agreements between the same
parties covering the same subject-matter has become elemen-
tary. We shall, therefore, do no more than to refer the reader
to the note following the case of *Redding v. Vogt,* 6 Ann.
Cas. 315, where the cases in support of the rule are collated.
The doctrine, however, has its limitations which are clearly
stated by the Supreme Court of Nebraska in the headnote
to the case of *Uhlig v. Barnum,* 43 Neb. 584, 61 N. W. 749,
in the following words:

"A new contract with reference to the subject-matter of a
former does not supersede the former and destroy its obligations,
except in so far as the new one is inconsistent therewith, when
it is evident from an inspection of the contracts and from an
examination of the circumstances that the parties did not intend
the new contract to supersede the old, but intended it as sup-
plementary thereto."

The foregoing statement of the rule is approved and fol-
lowed by the same court in *Walsh v. Lunney,* 75 Neb. 337,
106 N. W. 447.

The question therefore is: Do the transactions evidenced
by the agreement which we shall for convenience call the
original agreement and the lease, set forth in the complaint,
come within the doctrine contended for by counsel for re-
spondent, or do they fall within the exception stated by the
Supreme Court of Nebraska? We freely confess our ina-
bility to agree with counsel's contention. Let us pause a
moment for the purpose of analyzing the original
agreement. Its terms, conditions, and covenants are
simple and free from all complications. The terms
thereof in brief amount to this:

Respondent, in effect, agreed to construct and equip with-
in a specified time a certain building to be leased and used
by appellant when completed and equipped as a theater. Ap-
pellant, upon the other hand, agreed to lease the building

when completed and equipped for a term of ten years at a specified rental. Instead of incorporating into the original agreement the lease itself, as could have been done, the parties only incorporated a covenant on the part of respondent that it would complete and equip the building according to certain plans, and, when completed and equipped, that it would let the same to appellant, and a corresponding covenant on appellant's part that it would lease the building and equipment when completed for the term and rental specified. Cotemporaneous with said agreement the parties also prepared and signed a formal lease containing only the covenants and conditions usually found in ordinary leases. It was the original one, therefore, that contained respondent's covenant respecting the time and manner of the completion and equipment of the building, all of which might well have been, and usually is, incorporated into the lease in cases where lessors agree to make preliminary improvements, alterations, or repairs before the lessee is entitled to possession of the demised premises. It may be conceded that it was not necessary to incorporate the covenant into the lease since that covenant was already inserted in the original agreement, especially so in view that the original was drawn and executed cotemporaneously with the lease. It is sufficiently clear that in drawing the lease the parties had in mind the fact that the terms concerning the completion and equipment of the building, and the manner in which that should be done, had already been written into the original agreement, and hence need not be repeated in the lease. Moreover, it also seems clear that it was the intention of the parties that, when the lease became effective, the building and equipment were assumed to be fully completed. In view of this, it necessarily follows that the original agreement and the lease must be treated as evidencing but one transaction, and therefore, under the most elementary rules of construction, must be construed and enforced as one contract. In doing so the manifest intention of the parties is preserved, and the lease thus supersedes only such terms of the original agreement as are incorporated into the lease itself. When

respondent therefore failed to complete and equip the theater building in the manner and at the time specified in the original agreement, and obtained an extension of time in which to do so, it became necessary to change the dates in the lease when the tenancy should commence and terminate. To make the changes in the lease so as to make it conform to the extensions of time agreed to by the parties and indorsed on the original agreement, under the circumstances, did not have the effect of rescinding the original agreement in so far as the covenant to complete and equip the theater was concerned. Suppose the extensions of time had been given but no change had been made in the lease, could anyone reasonably contend that because the appellant accepted the lease and went into possession that the old or original agreement had been rescinded and superseded? Yet the only difference between the situation of the parties in such event and now would consist in making the change of dates in the lease to make it conform with the extensions of time within which to complete the building. We are of the opinion, therefore, that respondent's contention that the original agreement and the covenants therein contained were entirely rescinded and superseded, for the reasons stated, cannot be sustained. Upon the other hand, we think that the covenant in the original agreement to complete and equip the theater building as specified in the agreement remained in full force and effect, unless the same was waived by appellant by entering into possession of the theater building under the circumstances stated in the complaint.

Whether its acts in that regard constituted a waiver seems to us to be the only serious question in the case. Proceeding now to a consideration of that phase of the controversy, we remark that the original agreement and lease, when taken together, simply amounted to what is of- **4.** ten found in the books, and what is ordinarily termed an agreement for a lease, with covenants on the part of the lessor either to complete or to remodel, alter, or repair the building or premises to be leased in the manner and at the time agreed upon. In such cases the lessee usually is to take

possession of the building or premises when completed, altered, or repaired, and the agreement often also contains a lease.

Such agreements were under consideration by the courts in the following cases: *Tuller v. Davis,* 11 N. Y. Super. Ct. 187; *Kiernan v. Germain,* 61 Miss. 498; *Piper v. Fletcher,* 115 Iowa, 263, 88 N. W. 380; *Swift v. East, etc., Hotel Co.,* 40 Iowa, 322. There is no substantial difference between the principles involved in the case at bar and in the cases above cited; the only difference being that in the cases cited (except in *Tuller v. Davis, supra*) all the terms and conditions relating to the making of the alterations or repairs, including a lease, were incorporated into one agreement, while in the case at bar the lease was separate and failed to contain the covenants relating to respondent's duty to complete and equip the building as specified in the plans and specifications. In *Tuller v. Davis, supra,* the agreement, like in the case at bar, simply provided that the owner of the building should complete the same as specified, and the lessee agreed to lease the same when completed. The lessee, however, took possession of the building under the original agreement without a formal lease having been drawn, and the lessor having failed to comply with the covenant to complete the building as specified, the tenant brought an action for damages for breach of that covenant. The lessor demurred to the complaint for want of facts. The argument on the demurrer was the same as in the case at bar, to wit, that the lessee by going into possession had waived his right to sue upon the covenant. The court overruled the demurrer upon the ground that the lessee had alleged in his complaint that he did not know when he took possession that the building had not been completed in accordance with the terms of the covenant. The Supreme Court of Iowa, in the case of *Swift v. East, etc., Hotel Co., supra,* in passing upon an alleged error based upon the ruling of the trial court by which the lessor was not permitted to show on cross-examination of the lessee that he took possession of the demised premises with full knowledge that the lessor had not repaired the

defects in accordance with his covenant, at page 324 of the volume cited, said:

"If the answers had been given, and had shown that the plaintiff took possession with full knowledge of the condition, and without objection, this would not constitute a bar to his recovery, nor have shown that he waived the defects, but would only have been evidence tending in some degree to show that there were, in fact, no defects."

The foregoing case is approved and followed by the same court in a much later case, to wit, *Piper v. Fletcher*, 115 Iowa, 267, 88 N. W. 380. We think the true doctrine with respect to the legal effect of going into possession by the lessee is stated by the Supreme Court of Mississippi in the case of *Kiernan v. Germain, supra,* where it is in effect held that where the lessee enters into possession with full knowledge that the covenant to complete the building, or to make the alterations or repairs, has not been complied with by the lessor, the lessee merely loses the right to rescind the lease upon that ground, and after taking possession must comply with the covenant to pay the stipulated rent, but he may nevertheless sue the lessor for damages, or, in that state, in case the lessor brings an action to recover the rent, the lessee may recoup his damages in that action for the breach of the covenant. This is also the view taken in Tiffany on Landlord and Tenant, where in volume 1, page 603, the author says:

"While it is stated in a number of cases that the right to require the lessor's compliance with his covenant to make preliminary repairs or improvements as a condition precedent to the payment of rent is waived by the ·lessee's entry into possession, it does not seem that such entry involves a waiver of compliance with the covenant for other purposes, except perhaps as regards the sufficiency of the repairs actually made."

We consider the foregoing to be a correct statement of the law upon the subject of waiver, and in our judgment the rule is one which not only protects the rights of both the lessor and lessee, but also reflects justice upon both.

Counsel for respondent contend that, if appellant was dissatisfied with and unwilling to take the building in the condition it was at the time possession was tendered by re-

spondent, appellant should then have refused to enter into possession, and either have brought an action then or attempted to rescind the lease. But why should a lessee be driven to such a hazardous expedient when a far better and safer remedy for all concerned may be pursued? In this case the tenancy was for a term of ten years with a reserved rental of $60,000. The building was to be used by the lessee for a purpose which might yield large profits during so long a term. Why, then, should appellant have been required to yield up its term because a controversy had arisen between it and respondent with respect to whether the latter had fully complied with its covenant to build and equip the theater building in accordance with the terms of the original agreement? Assuming appellant was right in its contention, and had refused to take possession, and had thus lost the benefit arising from the use of the building and equipment, what would have been the measure of its recovery? Assuming that it would have been entitled to recover the value of its lease in excess of the rent reserved (1 Tiffany, Landlord & Tenant, 589), this might still have fallen far short of what it might have realized in profits from the use of the building when used for the purposes contemplated by the parties.

We think the appellant was justified under the law to pursue the course it did. In this regard it went further than the authorities cited above required it to go, in that it clearly indicated to respondent that in taking possession under the lease it did not waive its right to insist on the covenant to completely equip the theater building, as appears from the allegations of the complaint. But what right has respondent to complain of the course pursued by appellant? What right or defense has it lost? If it was not required to do more in equipping the building than it had done, it certainly is not required to do so now. If respondent ever had a defense to appellant's claim, it still has it, and may present it at the trial. All that appellant waived by taking possession of the building was its right to object to the sufficiency or character of the equipment so far as the same had been installed in the building, but it did not waive its right to insist that

respondent had entirely omitted to furnish certain things which fall within the term "equipment." As a matter of course, when appellant went into possession, it was required to pay the rent as stipulated in the lease. This was so because of its covenant to pay the same, and because under our statute a failure to pay rent when due gives the lessor a right to terminate the tenancy and to evict the tenant.

By what we have said, we do not wish to be understood as laying down a rule or measure of damages. That is a question not before us, and hence we do not pass upon it. That question, as pointed out in 1 Tiffany, Landlord and Tenant, 587, arises when the issues of fact are being tried. Neither do we wish to be understood by anything we have said or omitted to say that appellant as a matter of law is entitled to recover for any one or all of the items enumerated in its complaint, as constituting a part of the equipment mentioned in the agreement. Whether these things are a part of the equipment of a theater may be a question of fact or a mixed question of law and fact, and may have to be determined from the evidence of those who are informed with respect to what is meant by equipment in referring to a modern theater. By what is meant by equipment, so far as the same relates to the safety of the theater in emergencies, it may be that the ordinances of Salt Lake City, if there are any upon the subject, may become material.

What we hold is that, under the allegations of the complaint, the truth of which are admitted by the objection, which is, in its legal effect, a demurrer, the appellant is at least entitled to nominal damages for the alleged breach of the covenant.

From what has been said it necessarily follows that the judgment ought to be, and it accordingly is, reversed. The cause is remanded to the district court, with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.