## NELSON v. EICHOFF et al.

No. 5464—Opinion Filed April 25, 1916.
Rehearing Denied June 27, 1916.
(158 Pac. 370.)

1. **Landlord and Tenant—Rent—Abandonment by Lessee.**

Where a landlord being under covenant to place a building in a condition suitable for conducting a certain business fails to do so, and by reason of such failure the building is not only not suitable for said business, but is unsafe and dangerous, the lessee is justified in abandoning the leased premises, and after such abandonment cannot be held liable for rent. Partridge v. Dykins, 28 Okla. 54, 113 Pac. 928, 34 L. R. A. (N. S.) 984, distinguished.

2. **Landlord and Tenant—Condition of Premises—Duty to Repair.**

The lessee under such circumstances is not estopped to set up the lessor's breach of covenant, although he remained in possession for some time and paid rent, where he did not know of the defects in the building at the time he took possession, and after discovering them remained by reason of lessor's promise and attempts to repair, until the increasing defects in the building rendered the premises unsafe.

(Syllabus by Burford, C.)

Error from County Court, Oklahoma County; John W. Hayson, Judge.

Action by A. R. Nelson against O. L. Eichoff and another for rentals under an indenture of lease. From a judgment for defendants, plaintiff appeals. Affirmed.

Everest & Campbell. for plaintiff in error.

Sam Hooker and Mont F. Highley, for defendants in error.

Opinion by BURFORD. C. The plaintiff in error in this cause, who was also plaintiff in the court below, filed his petition in the county court of Oklahoma county, alleging that on or about the 5th day of March, 1909, he entered into a certain agreement with the defendants. whereby he agreed to erect for them a building on certain lots in Oklahoma City, and they in turn agreed to use and occupy the same for a term of five years from the 1st day of May, 1909, at a monthly rental of $150 per month; that on the 1st day of June, 1912, the defendants ceased to pay rent and that plaintiff was entitled to recover for the amount then due on the contract. Certain material provisions of the contract are as follows:

"Said building to be constructed of brick, and built and to be suitable for use as a livery stable, and to be finished in a manner similar to the building now occupied by the parties of the second part, it being understood that the inside finishing of said building may be altered and changed, but that the cost of same shall not be any greater than it would be to erect a building similar to the one now occupied."

"And said party of the first part further agrees that, after said building is turned over to the parties of the second part in the condition above described, they will keep the same in repair, during the entire period of said lease and occupancy, and that they will pay all water and light rentals, and keep the plumbing and sewer connections in reasonable and proper condition, at their own expense, and at the termination of said lease to turn and deliver up said premises to the party of the first part in as good condition as when it was received by them, natural wear and tear excepted."

The plaintiff also in a supplemental petition sought to recover certain rents accruing since the filing of the suit, and to recover $21.15 water rent and repairs, which he alleged the defendants should have paid. The defendants answered, admitting the execution of the contract, and alleging that the plaintiff failed to carry out the terms of the same, in that he did not erect a building of the kind and character contemplated by the terms of the agreement; that the building erected was not substantial and settled upon its foundation from 8 to 12 inches; that the walls of said building cracked; that the floors leaked, all of which made the building unsafe and unsuitable for the purposes for which it was intended to be used under the terms of the contract; that plaintiff had been notified thereof and had been called upon to fix said defects, but that he had wholly failed and refused to do so, and had failed to make the building substantial, or to fix the same so that the defendants could continue to pursue their business with reasonable safety to themselves and their property, because of which they were compelled to close out the business and abandon the building.

The plaintiff filed a reply in the form of a general denial, and afterward, at the trial, was allowed to file an amended reply, in which he set up, first, a general denial, and, second, a waiver and estoppel by reason of the fact that, as alleged, the defendants had seen the building erected, accepted the same. and moved into it and paid rent for a long period of time; that the damage to the wall occurred long after they accepted the building, and that the defendants were under covenant to repair said damages. There was a trial to the court and a jury, and a verdict given in favor of the defendants. Judgment was duly rendered thereon, motion for new trial filed and overruled, and the plaintiff brings the cause here for review.

The contention of the plaintiff relied upon for a reversal is well stated in his brief, as follows:

"The theory upon which the plaintiff in error proceeded was that, whether or not the building was constructed in accordance with the original contract, the defendants in error by the acceptance of it, and by the continued occupation of it after the discovery of the alleged defects, thereby waived their right to insist upon the performance of the contract as originally made, if it had not in fact been performed; and that, by their failure to promptly assert the right to a cancellation of the lease and a rescission of the contract upon the discovery of the defects, and failure of consideration alleged, they were estopped to set up such matters as a defense at the trial."

Plaintiff asserts that in consonance with this theory he offered the following instruction, which was refused:

"The court instructs you that the contract between plaintiff and defendants introduced in evidence did not require the plaintiff to build a building in all respects like the building at 119 West Second street, and, if you find that the defendants knew of the general character of said building, or had an opportunity so to know while it was being constructed, and moved into said building without protest as to the character of materials and the construction thereof, and continued to pay rent after he claims to have discovered the defects now claimed to exist, that these facts would not preclude the defendants from asserting that said building was not built according to the contract, and these defects would be no defense to plaintiff's recovery in this action."

Even if the plaintiff's theory were upheld, this instruction is entirely too broad. Certainly knowledge of the "general character" of the building would not necessarily charge defendant with knowledge that it would settle, crack, and become dangerous, much less that the floor would leak. Nor is there any support for the proposition that an "opportunity to know" charges one with knowledge. One doubtless has an "opportunity to know" the condition of a building in New York, since he may board the train and go there, but so long as he stays in Oklahoma, I apprehend, he cannot be said to be charged with knowledge of the defects in the construction of this building. Neither ought the defendant to be charged with knowledge of the defects in the construction of this building because he passed it once or twice while it was being constructed. Passing, however, to a consideration of the general propositions raised by plaintiff, it appears that, though in some respects sound, the contention cannot be sustained when applied to the facts of the instant case. It is settled law in this state that there is no implied covenant upon the lessor to repair, or keep in repair, a building leased for business pur-

poses. Tucker v. Bennett, 15 Okla. 187, 81 Pac. 423; Horton v. Early, 39 Okla. 99, 134 Pac. 436, 47 L. R. A. (N. S.) 314, Ann. Cas. 1915 D, 825; Jones v. Kress & Co., 54 Okla. 194, 153 Pac. 655, and cases cited. It is also true that the lease contains a covenant which, though peculiarly worded, evidently expresses the intention of the parties that the lessee is to keep the building in repair, during the entire period of the lease; but from a consideration of the whole instrument it is clear that the lessor was, in the first place, to furnish a building "suitable for use as a livery stable and to be finished in a manner similar to the building" at that time occupied by the defendants. In our judgment, it is a fair conclusion that it was the intent of the parties that the lessee should be liable for ordinary repairs, but not for changes or alterations necessary to place the building in the condition in which the lessor agreed to deliver it. This conclusion is strengthened by the contemporaneous construction of the contract by the parties; it clearly appearing that the lessee demanded that the landlord repair the floors and pillars, and that the landlord attempted to do so. It has been often held that the breach of an agreement to make changes or improvements necessary to fit the premises for some particular business constitutes a failure of consideration, and therefore a valid ground for abandonment of the premises. Tyler v. Disbrow, 40 Mich. 14;; Taylor on Landlord and Tenant (9th Ed.) p. 403; Bostwick v. Losev, 67 Mich. 415; Taylor on Landlord and Tenant etc., Co. v. Cruger (Tex. Civ. App.) 27 S. W. 212; Piper v. Fletcher, 115 Iowa, 263, 88 N. W. 380; Johns v. Eichelberger, 109 Ill. App. 35; Young v. Collett, 63 Mich. 336, 29 N. W. 850.

In Partridge v. Dykins, 28 Okla. 54, 113 Pac. 928, 34 L. R. A. (N. S.) 984, this court had under consideration a farm lease where the lessor had covenanted to erect a fence sufficient to turn live stock and had failed to do so. It was there held that "the covenant to repair was not a condition precedent, and that the lessors were entitled to recover the rent, notwithstanding their breach of said covenant," since the "covenant to repair and to pay rent are independent and not dependent" and the "defendant, having taken possession of the demised premises under the lease, is bound to pay the stipulated rent." The doctrine of this case, that taking possession and paying rent after notice of the defect will ordinarily waive the same, is thoroughly sound and sustained by ample authority. See Young v. Berman, 96 Ark. 78, 131 S. W. 62, 34 L. R. A. (N. S.) 977; Mulhaupt v. Enders, 38 La. Ann. 744, and the extended note to Young v. Berman, 34 L. R. A. (N. S.) 977. As applied to the facts of

this case, however, an important exception to the general rule laid down in Partridge v. Dykins, supra, comes into play. Here the testimony on behalf of the defendants (and, the jury having found for them, we must assume that such testimony was true) tended to show that they did not know of the defects until after they went into possession; and that, though they remained in possession for many months and paid rent, it was upon the faith of the promise and repeated effort of the landlord to repair; and that they remained until the defects in the floor and building became such that the building was rendered not only unsuitable for their business but unsafe, whereupon they surrendered the premises. It has been consistently held, both in England and America, that where the landlord, being under obligation to do so, fails to place the premises in condition so that they are tenantable, having in view the purpose for which they were rented, the lessee may avoid the lease (Edwards v. Etherington, R. & M. 268, 7 D. & R. 117; Smith v. Marrable, 11 Mees. & W. 5; Harthill v. Cooke's Executor (Ky.) 43 S. W. 705; King v. Grant, 43 La. Ann. 818, 9 South. 642; Bissell v. Lloyd, 100 Ill. 214; Prescott v. Otterstatter, 85 Pa. 534; Arbenz v. Exley, 52 W. Va. 476, 44 S. E. 149, 61 L. R. A. 957; McCardell v. Williams, 19 R. I. 701, 36 Atl. 719; 18 A. & E. Ency. Law [2d Ed.], and cases cited; note to Partridge v. Dykins, supra, 34 L. R. A. [N. S.] 984), the distinction being between breaches of covenant which render the premises entirely unsuitable or untenantable and those which merely impair the value of the premises without destroying their use. Partridge v. Dykins, supra, recognizes this exception in the discussion contained in the opinion, and such exception is even more clearly recognized in Lewis & Co. v. Chisholm, 68 Ga. 40, the principal authority cited in the Partridge-Dykins Case. In Lewis & Co. v. Chisholm, supra, it is said:

"Where a landlord covenants to keep premises in repair, his failure to do so, whereby their use by the tenant is impaired, will not work a forfeiture of the rent, unless the premises become untenantable and a constructive eviction results."

With reference to the facts of the case at bar, Young v. Collet, 63 Mich. 331, 29 N. W. 850, is closely in point. There the lessor rented certain premises for a lodgeroom. It was discovered that the floor was not deadened and the work of the lodge could not be carried on in secret. The lodge called upon the landlord to repair and, upon his failure to do so within a reasonable time, vacated the premises. The court in an action for rent held the lessee not liable and approved the following charge:

"Now, your first duty will be to determine whether or not the room furnished by the plaintiff to the defendants was in a suitable condition to be occupied as a lodgeroom. If you find that it was in such condition from the evidence in the case, then it will be your duty to find a verdict for the plaintiff. If you find that the room was not in such condition, then your duty will be to determine whether the plaintiff proceeded within a reasonable time to put the room in condition to be occupied as a lodgeroom, after it was ascertained that it was not in that condition."

"And what I mean by a reasonable time is this: Did he proceed, within a period of time necessary under the circumstances, to do conveniently what the lease required of him? If you find, under all the circumstances of the case, that he did this, then the defendants were not justified in vacating the premises, and the plaintiff would be entitled to recover. On the other hand, if you find from all the evidence in the case that he did not proceed within a reasonable time to put the room in order, then they would be, under such circumstances, justified in vacating the premises; and, under the circumstances, the plaintiff would not be entitled to recover."

This case is approved in Pierce v. Joldersma, 91 Mich. 463, 51 N. W. 1116.

In Vincent v. Central City Co., 45 Tex. Civ. App. 36, 99 S. W. 428, the court was considering a case where the lessor had failed to place in a suitable condition an oven, located on premises leased for a bakery. The landlord's breach rendered the premises unfit for the purpose for which they were leased. In an action for rent, the court held the defendant justified in an abandonment of the lease and further said:

"It is true, in this case, the tenant remained in possession long after he discovered that the landlord had failed to make the essential repairs required by the contract; but the answer shows that this was done at the instance and by the request of the plaintiff, accompanied by renewed promises to repair. Under these circumstances we do not think that the tenant should be held to have waived any right under the contract."

In the case at bar, the court instructed the jury, in part, as follows:

(6) "You are instructed that the contract between the plaintiff and defendants introduced in evidence did not require the plaintiff to build a building in all respects like the building at 119 West Second street, but provided that the finishing must be similar, and that all that is required under the contract is that there shall be a suitable compliance with the terms of said contract."

(7) "If, after a fair and impartial consideration of all of the testimony in this case, you believe that the building was not built in a similar manner, and you further find that the defendants knew of the general character of said building and moved into said

building without protest as to the character of materials and the construction thereof, and continued to pay rent after they claimed to have discovered the defects, and after they had notified the plaintiff to comply with his contract, that they would be precluded from asserting that the building was not built according to the contract, and that the defects would be no defense to the plaintiff's recovery in this action."

(8) "However, you are further instructed that if, after a fair and impartial consideration of all of the testimony in this case, you believe that the defendants have established by a preponderance of the testimony that the building was not constructed in compliance with the contract in the light of the instruction heretofore given you, and was not constructed to be suitable for use as a livery stable, and that after the defendants had discovered the same, and notified the plaintiff thereof and had given him a reasonable time to comply with his contract, and he refused within a reasonable time to comply with the same, and that by reason thereof you find that the building became unsafe for them to occupy and that on account of such unsafe and dangerous condition they removed from the building, it would be your duty to find for the defendants."

These instructions, in our judgment, more fairly state the law than the instructions offered by the plaintiff. Under them the jury found for the defendants, and, there being some evidence reasonably tending to support their verdict, it will not be disturbed here.

The assignment of error as to the amounts which plaintiff alleges he paid out for repairs and water bills chargeable to the defendants must likewise go out under the same rule. That question was fairly submitted, and the verdict is against him. Further, if there were error in the instruction, there is no assignment of error thereon and no sufficient exception in the trial court to authorize a consideration of them if there were such assignments.

The judgment is affirmed.

By the Court: It is so ordered.