VITAGRAPH, INC., v. AMERICAN THEATRE CO.

No. 4924. Decided September 19, 1930. (291 P. 303.)

72

*Allen T. Sanford,* of Salt Lake City, for appellant.
*J. M. Carlson,* of Salt Lake City, for respondent.

### ELIAS HANSEN, J.

The American Theatre Company prosecutes this appeal from a money judgment rendered against it and the Theatres Operating Company in favor of the plaintiff. The evidence is not brought here for review. The appeal is on the judgment roll. The defendant the Theatres Operating Company was served with summons. It did not answer the complaint or otherwise plead thereto and it does not appeal. By its assignments of error the appellant assails the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. Appellant also assails the findings of fact upon the ground that they do not support the judgment. The findings of fact are substantially in the same language as the allegations of the complaint. The facts alleged in the complaint and found by the trial court in its written findings of fact so far as material to the determination of the questions here presented for review are these: On July 21, 1927, the appellant and respondent entered into a written contract by the terms of which the respondent leased to the appellant a picture film known as "When a man loves." On September 9, 1927, an amended written contract of lease of the picture film was entered into between appellant and respondent. By the terms of the amended contract of lease the appellant agreed to pay to the respondent "a sum equal to fifty per cent of the gross box-office receipts without any deductions whatsoever." On September 20, 1929, the appellant assigned its contract with the respondent for the lease of the picture film to the Theatres Operating Company. The respondent was a party to the contract of assignment. The contract of assignment reads as follows: "Assignment of Contract.

"(Theatre) American          Date Sept. 20, 1927.
"(Street Address)——
"(City and State) Salt Lake City Utah

"For value received,——(hereinafter described as the Exhibitor) hereby assigns to Theatres Operating Company, a corporation (hereinafter described as the Purchaser) all the right, title and interest

of the said Exhibitor in and to the contracts now in force between said Exhibitor and Vitagraph, Inc., for the exhibition of pictures described below at the theatre specified above, and all the right, title and interest of said Exhibitor in and to any deposit heretofore paid on account of the rental of the said pictures, and said Exhibitor hereby releases Vitagraph, Inc. from all further obligation to perform its said contracts with said Exhibitor.

"The Purchaser hereby assumes and agrees from the date hereof with Vitagraph, Inc. to perform each and all of the terms and provisions of said agreements above described, therein agreed to be performed by said Exhibitor.

"Vitagraph, Inc. consents to the foregoing assignment, and so long as the said Purchaser perform each and all of the terms and provisions of said agreement therein agreed to be performed by said Exhibitor in accord with the terms thereof, Vitagraph, Inc. agrees to perform the terms and conditions of said agreements therein agreed to be performed by it.

"It is mutually agreed that if the Purchaser shall fail or neglect to perform or shall breach any of the terms and provisions of any of said contracts hereby agreed to be performed by said Purchaser, the said Exhibitor as well as the said Purchaser shall be liable jointly and severally to Vitagraph, Inc. or its assigns for any loss occasioned thereby.

"List of Contracts

| Date | Subject | Amount Date Subject Amount |
|------|---------|----------------------------|
| | When a Man Loves | As per amended contract dated September 9, 1927 whereby the exhibitor pays to the distributor fifty percent (50%) of the gross box-office receipts. |

"Whereas, the Exhibitor herein has heretofore entered into a leasehold contract and supplemental agreement, in writing, with one P. O. Silvagni, said contract and supplemental agreement covering the American Theatre at Salt Lake City, Utah, and, whereas, the aforementioned leasehold contract and supplemental agreement, provides, among other things, that the said P. O. Silvagni, may, at his option, organize and create a corporation for the purpose of taking over and assuming the said P. O. Silvagni's rights, duties and obligations thereunder, and which leasehold contract and supplemental agreement further provides that the said Corporation (so organized) may, at the option of its Board of Directors, at any time within six months from the date of commencement of said leasehold

contract and supplemental agreement, turn back the American Theatre to the Exhibitor herein and surrender to the Exhibitor herein its lease and the within film contracts, and whereas, the said P. O. Silvagni has, in fact, organized and created under the laws of the State of Utah a Corporation entitled Theatres Operating Company, and has in fact subrogated the said Corporation to all of his rights, duties, and obligations under the aforementioned leasehold contract and supplemental agreement, now, therefore, it is mutually understood and agreed by and between the Exhibitor herein, Theatres Operating Company and the Distributor herein, as follows, to-wit:

"1. In the event Theatres Operating Company herein shall exercise its option to and in fact surrender its lease to and terminate said leasehold contract and supplemental agreement with the Exhibitor herein, then and in such event, Theatres Operating Company herein shall be automatically relieved from any and all liability and obligations under the within contracts *accruing from and after the date of such leasehold surrender*, and it is further mutually understood and agreed by each and all of the Parties herein that, in such event, the primary liability of the Exhibitor herein, under the within contract, shall continue as heretofore.

"2. It is further mutually understood and agreed by each and all of the parties herein, that *either*, *until* such time as Theatres Operating Company exercises its option to and does in fact surrender its leasehold contract and supplemental agreement, *or*, in the event Theatres Operating Company shall not exercise its option as hereinabove stated, the Exhibitor herein shall assume the status of guarantor to Vitagraph, Incorporated, conditioned upon the proper, faithful, and complete fulfillment of each and all of the conditions of the within Film contracts.

"American Theatre Co.
"Fred Dahnken
"D. E. Schayer
[Signed] "F. C. Dahnken.
(Exhibitor)
"Theatres Operating Co., a Corporation
(Purchaser)
[Signed] "By P. O. Silvagni,
"Its President
"Vitagraph, Inc.
"By Thos. J. Christy
"(West Coast Sales Mgr.)"

The respondent furnished the film and fully performed its part of the contract. The film was exhibited by the

Theatres Operating Company at the American Theatre in Salt Lake City, Utah, from the 26th day of October, 1927, to the 3d day of November, 1927, both dates inclusive. The Theatres Operating Company surrendered its lease of the American Theatre, after the picture had been exhibited. No payments have been made to the respondent on the contract whereby it leased the picture film.

The appellant contends that the complaint is fatally defective in the following particulars: That the original contract for the lease of the picture film is not sufficiently pleaded; that the amended contract for the lease of the picture film is not sufficiently pleaded; that by the terms of the contract of assignment it affirmatively appears that the appellant became a mere guarantor for the faithful performance by the Theatres Operating Company of the contract of lease of the picture film; and that the facts alleged in the complaint are not sufficient to hold appellant as such guarantor liable for the amount owing by the Theatres Operating Company to the respondent. As to the original contract between appellant and respondent for the lease of the picture film, the complaint alleges:

"That on or about the 21st day of July, 1927, the defendant American Theatre Company made and entered into an agreement with the plaintiff by which it was agreed that the plaintiff should furnish, let and lease to said defendant a certain picture film known as 'When a man loves,' for the purpose of being exhibited by said defendant in the American Theatre in Salt Lake City, Salt Lake County, Utah; and that said defendant promised and agreed to pay for the use of said film or moving picture and as rental therefor the sum of $4,000 and in addition thereto 50% of the total receipts collected over and in excess of the sum of $10,000 by the said Theatre during the exhibition of said picture. Said defendant promised and agreed to pay to plaintiff said rental during the month of September, 1927. Said contract was known as contract No. 2112."

As to the amended contract between appellant and respondent for the lease of the picture film, the complaint alleges:

"That on or about the 9th day of September, 1927, the defendant American Theatre Company entered into an agreement in writing with the plaintiff modifying and amending said contract, dated the 21st day of July, 1927, and known as contract No. 2112. That a copy of the contract dated on or about the 9th day of September, 1927, is marked Exhibit A and attached hereto and made a part of this complaint."

A copy of the amended contract is attached to the complaint. The contract of assignment is pleaded thus in the complaint:

"That the defendant Theatres Operating Company took over, or pretended to take over, the operation and management of the American Theatre Co., on or about the 9th day of September, 1927, and in order that said Theatres Operating Company might obtain the said film or moving picture known as 'When a man loves' and in order to comply with the provisions of the said contracts heretofore described between the American Theatre and plaintiff which provisions contain a requirement that the consent of the plaintiff be obtained to a transfer or assignment of the contract, the defendants, American Theatre Co. and the Theatres Operating Co. made and entered into a contract in writing known and described as an assignment contract, on or about the 20th day of September, 1927. A copy of said assignment contract is marked Exhibit B, attached hereto and made a part hereof."

A copy of the "Assignment of Contract" is attached to the complaint.

It is urged in behalf of the appellant that the complaint should either have set out in haec verba or have alleged the substance of the original contract between appellant and respondent for the lease of the picture film. If the appellant claimed that the complaint was rendered ambiguous, uncertain, or unintelligible by reason of the fact that the original contract was not more fully pleaded, it could have brought such claim to the attention of the court by a special demurrer. This the defendant failed to do, but contented itself with filing a general demurrer which was overruled. Plaintiff's cause of action against the appellant is founded primarily, as well it might be,

upon the amended contract and the contract of assignment. By the terms of the amended contract, "it is mutually understood and agreed that the provisions of this contract and rider automatically supersede, and supplant, and take the place of any conflicting provisions in that certain contract No. 2112, dated July 21st, 1927, heretofore entered into by and between the parties herein." The amended contract is complete within itself and might well be the basis for an action for a breach of its terms independent of the original contract.

It is next contended that to attach a copy of the amended contract and a copy of the assignment contract to the complaint and make them a part thereof is not a sufficient pleading of the amended contract and the assignment contract. This court has heretofore held against appellant's contention in such respect. *Stephens* v. *American Fire Ins. Co.*, 14 Utah 265, 47 P. 83; *Orpheus Vaudeville Co.* v. *Clayton Inv. Co.*, 41 Utah 605, 128 P. 575. We adhere to the rule announced in those cases.

It is further urged on behalf of the appellant that its liability under the contract of the lease of the picture film is limited to that of a mere guarantor; that as such guarantor appellant is not liable unless and until it is affirmatively made to appear that the respondent has used due diligence to collect the money owing to respondent from the Theatres Operating Company; and that there is not allegation and no finding that the respondent has used due diligence or made any effort whatsoever to collect the money owing to it on account of the lease of the picture film from the Theatres Operating Company; and that therefore the complaint it fatally defective and the facts found by the trial court do not support the judgment. In support of appellant's claim that its liability is limited to that of a mere guarantor, reliance is had upon those provisions of the assignment contract which read thus:

"And it is further mutually understood and agreed by each and all of the Parties herein, that, in such event, the primary liability of the

Exhibitor herein, under the within contract, shall continue as here-tofore. It is further mutually understood and agreed by each and all of the Parties herein, that *either*, *until* such time as Theatres Operating Company exercises its option to and does in fact surrender its leasehold contract and supplemental agreement, *or*, in the event Theatres Operating Company shall not exercise its option as herein-above stated, the Exhibitor herein shall assume the status of guarantor to Vitagraph, Incorporated, conditioned upon the proper, faith-ful, and complete fulfillment of each and all of the within Film con-tracts."

These provisions of the assignment contract lend some support to appellant's contention. In construing a contract, however, "the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to end and all its terms must pass in review; for one clause may modify, limit, illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions." 6 R. C. L. § 227, pp. 837, 838. The contract of assignment also contains this provision:

"It is mutually agreed that if the purchaser shall fail or neglect to perform or shall breach any of the terms and provisions of any of said contracts hereby agreed to be performed by said Purchaser, the

said Exhibitor as well as the said Purchaser shall be liable jointly and severally to Vitagraph, Inc., or its assigns for any loss occasioned thereby."

Clearly if full effect is given to the foregoing provision of the contract of assignment, the liability of appellant on the contract for the lease of the picture film is not limited to that of a guarantor. Moreover, the liability of a guarantor of a contract is not necessarily inconsistent with the liability of one who is primarily liable on a contract. The former is included within the latter. Prior to the execution of the contract of assignment the appellant was clearly liable to perform its contract with the respondent for the lease of the picture film. There is no language in the assignment contract which expressly or by implication releases the appellant from such an obligation, and by giving effect to all of the language used in the contract of assignment, the obligation of the appellant on the contract for the lease of the picture film was not altered by the terms of the assignment contract. One who assigns a contract does not thereby escape his obligation to perform his part of the contract so assigned. Before the appellant can be said to have been released from its primary obligation to pay for the use of the picture film, it must be made to appear that the respondent consented to such release. The language of the assignment contract when considered as a whole does not show that the respondent released the appellant from its absolute and unconditional obligation to pay for the use of the picture film while exhibited at the American Theatre. We are thus of the opinion, and so hold, that the appellant is primarily liable for the payment of the money owing to the respondent for the lease of the picture film.

The judgment is affirmed. Respondent is awarded its costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.